IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| IN RE: | § CASE NO. 21-90015-11 |
| | § HOUSTON, TEXAS |
| ORG GC MIDCO, LLC, | § TUESDAY, |
| | § NOVEMBER 9, 2021 |
| DEBTOR. | § 4:00 P.M. TO 4:55 P.M. |

FIRST DAY HEARINGS (VIA ZOOM)

BEFORE THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:                    SEE NEXT PAGE

(Recorded via CourtSpeak)

TRANSCRIPTION SERVICE BY:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 Eldridge Road, #144
Sugar Land, TX 77478
281-277-5325
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

<u>APPEARANCES (VIA ZOOM)</u>:


FOR THE DEBTOR:                          WEIL GOTSHAL & MANGES, LLP
                                         Alfredo Perez, Esq.
                                         Theodore S. Heckel, Esq.
                                         700 Louisiana, Ste. 1700
                                         Houston, TX  77002-2755

                                         WEIL GOTSHAL & MANGES, LLP
                                         Sunny Singh, Esq.
                                         Arden Ham, Esq.
                                         767 Fifth Avenue
                                         New York, NY  10153-0119


FOR JP MORGAN CHASE BANK,
NA, AS PREPETITION ABL AGENT:            WINSTEAD PC
                                         Phillip L. Lamberson, Esq.
                                         500 Winstead Building
                                         2728 N. Harwood Street
                                         Dallas, TX  75201


FOR THE US TRUSTEE:                      OFFICE OF THE US TRUSTEE
                                         Ha Nguyen, Esq.
                                         515 Rusk St., Ste. 3516
                                         Houston, TX  77002

FOR BENEFIT STREET PARTNERS,
AS TERM LOAN AGENT AND
CERTAIN TERM LOAN LENDERS:               WEIL GOTSHAL & MANGES, LLP
                                         Jayme Goldstein, Esq.
                                         767 Fifth Avenue
                                         New York, NY  10153-0119


ALSO PRESENT:                            Robert Wagstaff


(Please also see Electronic Appearances.)

1          <u>HOUSTON, TEXAS; TUESDAY, NOVEMBER 9, 2021; 4:00 P.M.</u>

2          THE COURT:  Good afternoon.  Please be seated.

3          All right.  We are here for first day hearings in

4     the ORG GC Midco, LLC case.  It's 21-90015.

5          We'll begin with anyone that wishes to make any

6     statements at today's hearing.  If you would please press

7     five-star on your line.  I see Mr. Perez has already done so.

8     I'll start with him.  If there's anyone else that wants to

9     speak, feel free.  Give me just a second.

10          Mr. Perez, good afternoon.

11          MR. PEREZ:  Thank you, Your Honor.  Alfredo Perez on

12     behalf of the sole Debtor in this case.

13          Your Honor, first of all, I want to thank the

14     Court's staff for accommodating us.  We did this on short

15     notice, so I really want to thank Ms. Do for getting all of

16     this arranged and for getting our hearing on the 22nd.  So,

17     first of all, thank you.

18          Second, Your Honor, I want to thank the Office of

19     the U.S. Trustee.  We have worked with them -- although

20     there's not a lot of motions in this case, we've worked with

21     them very cooperatively, and I think everything has been

22     resolved.  I want to thank them.

23          And so, Your Honor, I'd like to introduce our team.

24     I don't believe that you have met -- other than Mr. Genender,

25     I don't believe that you have met other members of our team.

1      So we're going to -- there are going to be three people

2      presenting:

3              First is going to be Mr. Sunny Singh, who is a

4      partner at the firm.  He will be doing the first-day

5      demonstrative, Your Honor.  And unfortunately, we had hoped to

6      file it well in advance of this hearing, but I think it's just

7      getting on file now.  But we will put it on the -- you know,

8      on the screen, and then we'll also have a version on file.

9              And then, after that, Your Honor, Mr. Theo Heckel

10     will present the cash management motion.

11             And then Ms. Katherine Lewis will do the NOL and the

12     scheduling motion.

13             Your Honor has already entered the fourth motion,

14     which was the claims agent motion, so we had put that last,

15     so, obviously, we won't have to do that.

16             But again, we wanted to thank the Court.  Normally,

17     I get to do joint administration, but there isn't any here, so

18     I don't have anything to do, other than pass the baton to

19     Mr. Singh, who will, with the Court's permission go through

20     our first-day demonstrative to give the Court some background

21     as to who we are and why we're here and what we're hoping to

22     accomplish in the next couple of weeks.

23             THE COURT:  Thank you, Mr. Perez.

24             Before we go to Mr. Singh, I have somebody from

25     (646)728-4312 that had pressed five-star.  That may be

1       Mr. Singh, I don't know.  But who do we have at that number?

2               MR. SINGH:  Yes, Your Honor, I think that was --

3       Sunny Singh.  I think that was me.  We're in a conference room

4       here, so ...

5               THE COURT:  All right.  Thank you.

6               Is there anyone else that wishes to make any

7       statement about this?

8               So, before you start, I just have a -- sort of this

9       overall question, and I wanted to be sure that I'm

10      understanding what I stayed up reading and get -- to get ready

11      for today's hearing, is that you don't really need me.  You

12      just need sort of this cementing order that will tie everybody

13      together to what they've already agreed to do.  But am I

14      missing something or is that what we're doing today?

15              MR. SINGH:  No, Your Honor -- Your Honor, Sunny

16      Singh, for the Record, on behalf of the Debtor.

17              Your Honor, you are correct.  You know, at this

18      point, you know, we're pleased to be before you with a hundred

19      percent consent.  And literally, as of yesterday, we did sign

20      with our ultimate equity holders, as well, so they're on

21      board.  And everybody through is riding through or will be

22      refinanced as part of the case.

23              So that's not exactly where we started, Judge, when

24      we were planning for the Chapter 11 filing, but that is where

25      we had ended up as of yesterday.  And to ensure that

1    everything sort of carries out the way we've all been planning

2    in our essentially planning for an exit, we should need very

3    little involvement and help from Your Honor at the end of the

4    day, just given where we've landed.  But you know, we do still

5    require, obviously, the Chapter 11 case and plan to get

6    confirmed, ultimately, here.  But we really expect this to be

7    a very, hopefully, easy case for Your Honor and, you know, all

8    of the parties on the phone.

9            THE COURT:  And just to be sure, again -- and this

10   is just something I'm confident of what I've read.  I mean, a

11   lot of times, I'll see a case like this, and you've got 99.93

12   percent of the bondholders on board, but you just need the

13   order to drag along the extra one.  And you may have people

14   you can't find or whatever.  But in this case, you've found

15   everyone and literally everyone has signed up affirmatively.

16   Is that really where we are?

17           MR. SINGH:  That's correct, Your Honor.  There's

18   really two lenders, ultimately, Goldman and Benefit Street

19   (indiscernible) funds below them that hold throughout various

20   funds.  But every single lender has signed up lender

21   affirmatively in support of the plan.  So we have literally

22   100 percent consent.

23           THE COURT:  All right.  So do you think that you all

24   are capable of losing this case?

25           MR. SINGH:  Your Honor, I promised Mr. Perez I would

1      not -- I would not lose this case, so as to not tarnish his

2      record.

3              (Laughter)

4              THE COURT:  All right.  One more question for you.

5      I know that Ms. Do told you that you could have November 22nd

6      at 2 in the afternoon.  If you've already used that time,

7      that's fine.  If we can go to 11 in the morning, it would be a

8      little bit better, just for me personally, but I can do 2 in

9      the afternoon.  Do you all care between the two?

10             MR. SINGH:  No, Your Honor.  We'd be fine at 11,

11     that's -- that works for us.

12             THE COURT:  Okay.  Well, let's do it at 11, just for

13     my own personal schedule.  It would be a little bit easier.

14     Because I think she didn't know how long this would take, but

15     my estimate is that I'll still get to eat lunch that day.

16             So why don't you go ahead and --

17             MR. SINGH:  Yes, Your Honor.

18             THE COURT:  Why don't you go ahead, Mr. Singh?

19             MR. SINGH:  Okay.  Thank you, Your Honor.

20             And Your Honor, if you wouldn't mind, my colleague

21     Arden Ham, who you should be able to see on the screen, could

22     put up the presentation, if you could grant him control.

23             THE COURT:  Sorry.  Who is going to have it?

24             MR. SINGH:  It's Arden Ham, H-a-m.  He's just popped

25     up on the --

1          THE COURT:  Oh, here he is now.

2          MR. SINGH:  -- active camera.

3          THE COURT:  I've got him.  All right.  Mr. Ham, you

4     should be able to broadcast at this point.

5          MR. HAM:  Your Honor, can you see this?

6          THE COURT:  I can, thank you.

7          MR. SINGH:  Yeah.  Okay.  You can just leave it

8     there.

9          Okay.  Your Honor, we're just going to begin then.

10    So, by the way, just in terms of just so Your Honor has it, we

11    did file an affidavit of service appointing noticing agent

12    Stretto.  It's at ECF Number 44.  The notice has gone out of

13    today's hearing by overnight mail and email to our top 30

14    unsecured creditors, obviously our secured lenders who are on

15    the phone, taxing authorities, insurers, and banks.  And these

16    parties also received notice a few weeks ago, when we

17    commenced solicitation and included a notice of intention to

18    commence these Chapter 11 cases.  So the parties should be

19    well aware of today's hearing and this case.

20         Your Honor, just on Page 2, ORG Midco is the

21    intermediate holding company of GC Services Limited

22    Partnership, which is one of North America's oldest and

23    largest privately held providers of accounts receivable

24    management and business process outsourcing solutions.

25         We've commenced this case, as Your Honor noticed, to

1    implement a prepackaged restructuring.  Essentially, we're

2    going to be reducing our funded indebtedness from about $210

3    million to $130 million upon emergence.

4           On October 16th, we executed a restructuring support

5    agreement with 100 percent of our existing term loan lenders

6    that's Goldman and Benefit Street.  And pursuant to the

7    restructuring support agreement, all parties have agreed to

8    implement the balance sheet restructuring here and to cause as

9    little disruption to our operations as possible.

10           And Your Honor noted the Debtor is the holding

11    company and is the only entity that has filed.  The

12    subsidiaries below are not Debtors in these Chapter 11 cases.

13    Frankly, due to the consensual nature of this case, that

14    wasn't necessary, and so there was no reason to drag those

15    nonDebtor operating subs through Chapter 11, and the lenders

16    and the company all agreed to keep them out of Chapter 11.

17           And as I noted, Your Honor, at this point, as of

18    last night -- or yesterday, I should say, we've also got the

19    support of our equity holder -- well, we've got one equity

20    holder, which is a holding company, but the equity holders

21    that sort of sit above, both majority and minority equity

22    holders there are in support of the plan.  Stocks are riding

23    through.  So, again, we think this is a consensual -- wholly

24    consensual plan that should minimize any burden on the Court

25    or other parties-in-interest.

1    Your Honor, I'm not going to go through all of the

2    company background, but you know, did want to note that we are

3    headquartered in Houston, Texas.  We have 6,000 -- or there

4    are 6,000 plus employees in numerous of our facilities across

5    the United States and in the Phillippines.

6    Just in terms of key players, Judge, we do have an

7    independent board of managers that's overseeing this entire

8    process, including today's filing.  That board is comprised of

9    three individuals:  Mr. John Haas, Mr. James Decker, and

10   Mr. Steven Panagos, all with extensive restructuring

11   experience.

12   Our Chief Executive Officer is Mark Schordock.

13   Michael Jones is our Chief Financial Officer.

14   Mr. Robert Wagstaff, who you might be able to see on

15   the line, is our Chief Restructuring Officer, and he's also

16   our first-day declarant.  Mr. Wagstaff is with Riveron.

17   Brad Batig, our General Counsel.

18   And Riveron is the financial advisor.

19   And obviously, we are counsel to the company.

20   The existing term loan lenders, Your Honor, are

21   advised by Stroock & Stroock & Lavan, Mr. Goldstein and

22   Mr. Ginsberg, who are on the line, and others from their team;

23   as well as King & Spaulding is advising Goldman Sachs.

24   Mr. Jowers and (indiscernible) are both on the line, and their

25   teams.

1          Your Honor, our existing ABL lender is JPMorgan,

2      advised by Winstead, PC.

3          And our sponsor, Owner Resources Group, LLC, is

4      advised by Waller Landsden.  Those are the players, Your

5      Honor.

6          Just to give you some time line and perspective on

7      how we got here, Your Honor, the company started to have some

8      financial struggles and inability to meet its covenants around

9      the Fall of 2019.  It missed some regularly scheduled interest

10     payments in January.  And there were some forbearances

11     executed in April of 2020.

12         Once those forbearances expired, we were still under

13     the control of the prior sponsor, but the lenders did exercise

14     remedies and did replace the board and amended the

15     organizational documents, where the three individuals who I

16     mentioned earlier are now our board managers.

17         Those board managers, you know, under their

18     guidance, the company, its advisors, and management team, then

19     commenced negotiations with our term lenders, our ABL lender,

20     and our sponsors to come up with the consensual restructuring

21     that we've got before you today.

22         And as I noted, on October 16th, we signed our

23     restructuring support agreement, commenced our votes, our

24     solicitation and voting pre-petition, which has been

25     completed.

1          And on November, Your Honor, as we noted, we've got

2     100 percent consent.

3          We commenced the case.  We did give notice overnight

4     of today's filing.  And as Your Honor noted, we've requested a

5     hearing for confirmation on November 22nd.  And we hope to

6     emerge as soon as possible thereafter.  Your Honor, we're

7     literally targeting the 23rd, if amenable and if we're able to

8     do that.

9          Your Honor, on Page 6 of the presentation, just a

10    simple org chart to help orient the parties and the Court.

11    Again the only Debtor here is Midco, LLC, highlighted in the

12    red box there.

13         The other entities below, where our operations

14    occur, are not Chapter 11 Debtors.

15         And the only equity holder is ORG GC Holding, LLC.

16    And we've got the consent of the equity holder sitting one

17    level above the holding entity.

18         What we're trying to do here, Your Honor, is a

19    balance sheet restructuring to reduce our heavy debt load.  We

20    are proposing to take our current debt amount from about $210

21    million to $130 million.  The existing term loans will be

22    converted to new one L and two L facilities.  And we're in the

23    process of refinancing our ABL loan or, you know, we'll deal

24    with it in another way, if we need to, but we expect to be

25    able to refinance it and have that announced in connection

1    with the filing.

2           Your Honor, I already talked about the voting

3    results on Page 8.

4           But just to give you a quick overview of the plan on

5    Slide 9, Your Honor, we do contemplate a DIP financing.  It's

6    a six-million-dollar DIP that's coming in on a senior secured

7    basis.  It will be senior on the term loan collateral side.

8    We have a -- sort of a crisscross collateral structure, where

9    JPMorgan, our ABL lender, has a first lien on ABL collateral,

10   primarily current assets and receivables, and our term loan

11   lenders have first liens on the remaining sort of hard assets

12   of the company.  The DIP will come in on top of the term loan

13   side, but not on the ABL side.  And it's contemplated, Your

14   Honor, under the plan, that the DIP will convert, dollar-for-

15   dollar, into new initial one L loans.

16          Judge, we have not scheduled an interim DIP hearing;

17   we don't need one, frankly.  We are planning to move forward

18   with our DIP hearing and DIP motion on the 22nd, in connection

19   with confirmation, on a final basis.  And should Your Honor

20   approve it, the DIP would be funded immediately or in

21   connection with closing, and really be going to reimburse or

22   pay for any remaining restructuring costs of the company.

23          Our existing term loans, Your Honor, as I noted, a

24   hundred percent acceptance.  They are converting into one Ls,

25   two Ls, some preferred equity and common equity and general

1    unsecured claims riding through.

2            Our ABL will either be refinanced or otherwise

3    unimpaired.

4            Equity is being canceled, at this point

5    consensually.

6            We do have releases contemplated by the plan, which

7    we'll talk to you more about at the confirmation hearing.  But

8    just to note, we do have third-party releases.  And all

9    parties, whether they voted or not, were given an opportunity

10   to opt out of being a released party.  And that deadline still

11   has not expired, it was until the 16th of November at 4 p.m.

12           On Page 10, Judge, just so you can see what we are

13   contemplating, in terms of a post-reorganized capital

14   structure, we will have some new sort of holding companies,

15   new HoldCo and new HoldCo subs that are created.  And we're

16   trying to maximize tax -- our NOL tax benefits here

17   (indiscernible) Ms. Lewis -- Ms. Lewis -- excuse me -- will

18   talk to you about that in a little bit with the NOL motion.

19   But this is our reorganized capital structure as we sort of

20   see it.

21           Your Honor, I already talked about the DIP facility,

22   and we'll talk to you more about the exit term loans, which

23   we've summarized here on Slide 12, in connection with

24   confirmation.  But I did want to highlight for you our

25   milestones on Slide 13.

1          As I noted, we've already commenced solicitation.

2     Our voting deadline has passed.  We gave notice of the

3     anticipated filing and then subsequently of today's hearing to

4     all interested parties up at the HoldCo or Midco level -- I

5     should say -- holding company level.

6          We're targeting the 22nd, now at 11 a.m., for our

7     combined confirmation hearing and disclosure statement.  It

8     would also be our DIP hearing.  And then we intend to emerge

9     as soon thereafter as possible and currently targeting the

10    23rd of November.

11         So, Your Honor, I'll pause there to see if you have

12    any questions for me on the presentation or anything further.

13         THE COURT:  So I have one comment; I don't know that

14    it's a question.  And I will tell you the comment comes from

15    having tried to take in an awful lot through a fire hose that

16    you all filed with me.  I don't have any issue about whether

17    the disclosure was adequate, so don't misread the comment

18    because I don't think this affects adequacy of disclosure.

19         When we get to the 22nd, I was concerned when I

20    looked at the forecasts as to what the liquidity levels would

21    be on a go forward basis.  And I think it would be helpful if,

22    on those forecasts -- again, not for disclosure purposes

23    because excess liquidity only makes it a more palatable plan,

24    not a less palatable plan.

25         I think that the excess liquidity comes out of

1       undrawn lines.  But I was a little bit worried where I think

2       it shows sort of a 2 million constant liquidity, but some

3       early year losses of cash flow.  I would like to know, as we

4       go through those years, when I get to the feasibility analysis

5       on the 22nd -- and again, this may be in your disclosure

6       statement because I did try and read things fast -- to be

7       certain that, from a feasibility point of view, I'm not going

8       to face a near-term liquidity crunch.  And I think just adding

9       in the availability of undrawn lines would probably, you know,

10      resolve issues.  And maybe it's there in the table and I

11      missed it.  But I would just make that request to you,

12      Mr. Singh.

13              MR. SINGH:  Absolutely, Your Honor.  We will make

14      sure we address that issue.  And I think, Your Honor, you're

15      correct, there will be availability on undrawn lines, which is

16      what we're contemplating, to support the company's liquidity.

17      But we'll make sure that we point that out to Your Honor and

18      have that adequately addressed.  And of course, we've been

19      working arm in arm with our lenders and their advisors to make

20      sure everybody has a complete picture.

21              THE COURT:  And it's --

22              MR. SINGH:  But we'll make sure to --

23              THE COURT:  It --

24              MR. SINGH:  -- highlight --

25              THE COURT:  It may already be in that table because

1      I'm -- and I -- if it is, don't bother to revise it, just show

2      me where it's there.

3              MR. SINGH:  Of course, of course.  Thank you, Judge.

4              Okay.  Your Honor, I don't know if -- I think, at

5      this point, I am happy to move to -- I don't know if you

6      wanted to hear from anybody else; or, frankly, I'm not sure if

7      they even intended to speak, but if they did, I didn't want to

8      rush through without giving that opportunity.

9              THE COURT:  Thank you.

10             Does anyone else wish to make sort of an opening

11     statement, either in support of or in opposition to what the

12     goals are that have been announced by Mr. Singh today?

13         (No verbal response)

14             THE COURT:  All right.  Mr. Singh --

15             MR. SINGH:  Okay.

16             THE COURT:  -- I don't see anyone else that has

17     pressed five-star and wishes to speak.  I do see people

18     looking at me and pretty content-looking.

19             MR. SINGH:  Good, Your Honor.  I think that means,

20     hopefully, I didn't screw it up, so ...

21             Then, Your Honor, I will just introduce our witness

22     Mr. Robert Wagstaff.  He's on the line, you can see him; he's

23     also on video.  Mr. Wagstaff is of Riveron, our first-day

24     declarant.  We filed his declaration at ECF Number 3.  It's

25     Exhibit 24-1 in our exhibit list.  And so I'd like to move

1    Mr. Wagstaff's declaration into evidence.  We'd like to rely

2    on his declaration for his direct testimony.  Of course, he's

3    available for live cross, should anybody wish to do so.  And

4    his declaration applies to all the motions for today, Judge.

5              THE COURT:  Is there any objection to the admission

6    of Mr. Wagstaff's declaration that was filed last night and is

7    now being offered as Exhibit 24-1, as substantive evidence at

8    today's hearing?  I have read the declaration already.

9         (No verbal response)

10             THE COURT:  The declaration is admitted.

11        (Wagstaff Declaration received in evidence.)

12             THE COURT:  Is there anyone that has any cross-

13   examination questions or further direct questions for

14   Mr. Wagstaff.  If so, please press five-star.

15        (No verbal response)

16             THE COURT:  Mr. Wagstaff, would you go ahead and

17   press five-star one time on your line?  Good afternoon,

18   Mr. Wagstaff.

19             MR. WAGSTAFF:  Can you hear me, Your Honor?  Good

20   afternoon.

21             THE COURT:  I can hear you fine.  Yes, sir.  Would

22   you raise your right hand briefly for me?

23        ROBERT WAGSTAFF, WITNESS FOR THE DEBTOR, SWORN

24             THE COURT:  Thank you.

25             Is there anything you want to add or delete to your

1  declaration that you think would make it a more complete

2  declaration or are you satisfied with what you've got?

3          MR. WAGSTAFF:  I'm satisfied with what we have

4  filed, Your Honor.

5          THE COURT:  Okay.  Thank you for coming today,

6  Mr. Wagstaff.

7          MR. WAGSTAFF:  Thank you.

8          THE COURT:  Mr. Singh.

9          MR. SINGH:  Thank you, Your Honor.

10          With the declaration admitted, I will turn it over

11  to Mr. Heckel, who's going to handle the cash management

12  motion.

13          THE COURT:  All right.  Mr. Heckel, I need you to

14  press five -- there we go.  Thank you.  Mr. Heckel, good

15  afternoon.  Whoops, I didn't get you.  Hold on.  There we go.

16  Go ahead, please, Mr. Heckel.  Mr. Heckel?

17          MR. HECKEL:  Hi, Your Honor.  Can you hear me okay?

18          THE COURT:  I can now.  Thank you, sir.

19          MR. HECKEL:  Great.  Thank you.  For the Record,

20  Theodore Heckel, Weil, Gotshal & Manges, on behalf of the

21  Debtor.

22          I will be addressing the Debtor's cash management

23  motion, which is listed as Item 1 on today's Agenda and filed

24  at Docket Number 22.  May I proceed, Your Honor?

25          THE COURT:  Please do.

1          MR. HECKEL:  Thank you.

2          So, Your Honor, by this motion, the Debtor requests

3     relief regarding its participation in the company's cash

4     management system, and the Debtor has been in contact with the

5     United States Trustee regarding the relief requested in the

6     motion.

7          The Debtor -- to be clear, the Debtor is not

8     requesting -- or is not seeking any relief with respect to the

9     nonDebtor affiliates or bank account for their cash management

10    practices.  The Debtor is specifically requesting authority to

11    continue participating in the company's existing cash

12    management system to implement changes to the cash management

13    system in the ordinary course as they relate to the Debtor,

14    such as by opening or closing a bank account of the Debtor, to

15    continue to perform and honor intercompany transactions, and

16    then to provide administrative expense priority for

17    intercompany claims, to honor and pay all pre-petition and

18    post-petition bank fees, and to continue serving as obligor on

19    the Debtor's -- or the company's existing ABL facility.

20         And further, the Debtor requests that the Court

21    authorize JPMorgan Chase, where the Debtor's sole bank account

22    is located, to continue serving, administering, and debiting

23    the Debtor's bank account in the ordinary course.

24         So, with that, Your Honor, I wanted to ask you if

25    you had any specific questions about the motion or how you

1    would otherwise like me to proceed.

2            THE COURT:  I'm going to let you proceed however you

3    want to proceed, Mr. Heckel.  You got the floor.

4            MR. HECKEL:  All right.  Well, thank you, Your

5    Honor.

6            So the -- to provide a quick overview of the

7    company's cash management system, it's comprised of 56 bank

8    accounts, which pertain to various aspects of the company's

9    business.  However, only one of those accounts is

10   (indiscernible) by the Debtor, and that's referred to in the

11   motion as the "Debtor operating account."

12           So, as previously noted, the Debtor operating

13   account is held at JPMorgan and typically maintains a

14   relatively small balance, often in the range of about a

15   hundred to $200,000.  And most of the funds received into the

16   account are in the form of equity distributions from the

17   subsidiaries or intercompany loans.  And all of the funds that

18   go into the Debtor operating account (indiscernible) on as-

19   needed basis.

20           So I wanted to -- so, from there, I would like to

21   ask you if -- you know, if Your Honor -- if we could move into

22   the -- you know, discussing the Debtor's desire to continue as

23   an obligor under the existing ABL facility because I think

24   most of the relief requested in the motion is (indiscernible)

25   you know, pretty standard and -- as for most cash management

1    motions.  But the kind of nuance here is that the Debtor is

2    seeking to continue as an obligor under the existing ABL

3    facility.

4            And so the company has an existing ABL facility, and

5    the Debtor is technically a borrower under the existing ABL

6    facility, but effectively serves as a guarantor and obligor

7    thereunder.  And so, by continuing to serve as an obligor

8    under the existing ABL facility, this will ensure that the

9    Debtor's operating entities -- or the Debtor's nonDebtor

10   affiliate operating entities continue to have access to the

11   existing ABL facility during this Chapter 11 case, which is,

12   frankly, just critical to the ongoing operations of the

13   company.

14           And with that, you know, the Debtor has agreed not

15   to borrow under the existing ABL facility and not draw any

16   funds in connection with the existing ABL facility, and such

17   funds will not be (indiscernible) available to the Debtor.

18   And the Debtor, you know, believes that this is -- you know,

19   that this determination to continue as an obligor under the

20   existing ABL facility represents a sound exercise of its

21   business judgment.

22           THE COURT:  So are you asking --

23           MR. HECKEL:  So (indiscernible)

24           THE COURT:  Are they a guarantor?  Is the Debtor a

25   guarantor under the ABL?

1          MR. HECKEL:  So, Your Honor, the Debtor is

2     technically a borrower under the ABL, but it doesn't -- the

3     Debtor does not draw under the ABL, it's my understanding.  So

4     it really serves in a guarantor capacity.

5          THE COURT:  So are you asking me to convert whatever

6     ABL obligation might exist from a pre-petition claim of

7     whatever nature of it is to an administrative claim, or are

8     you asking --

9          MR. HECKEL:  No --

10          THE COURT:  -- the Debtor can perform under it

11     without creating an administrative obligation.

12          MR. HECKEL:  Yes, Your Honor.  With respect to the

13     latter, Your Honor, we're requesting that it just continue to

14     perform under --

15          THE COURT:  So I'm not sure the language works.  Let

16     me put up for you the language that I am not sure works.  I

17     think -- like I said, I don't have any problem that, if the

18     Debtor has administrative obligations under the ABL, and it

19     wants to continue to perform those, unless I hear an

20     objection, that's easy for me.

21          But I'm a little concerned that this says that

22     obligations continue during this case.  And then it also talks

23     about advances that you're telling me we don't need.  So, if

24     what you really want to say is that the Debtor may continue to

25     perform administrative functions under the ABL without further

1     court order, and that this doesn't convert the loan from a

2     pre-petition obligation to an administrative obligation, I'm

3     happy to do that.  If you're asking for something different

4     than that -- and I'm afraid that language may say more than

5     what I just said, that I need to get a better handle on why we

6     would be doing that.

7               MR. HECKEL:  Your Honor, I think -- so, Your Honor,

8     in connection with the cash management order, the Debtor, you

9     know, has, you know, worked with both the United States

10    Trustee and the existing ABL lender specifically with respect

11    to that language that's contained in there.  So I think, you

12    know, Your Honor, we'd like to maybe discuss potentially

13    revising that language in a way that would be consistent with

14    what Your Honor --

15              THE COURT:  Well, let me --

16              MR. HECKEL:  -- what Your Honor --

17              THE COURT:  Let me get the --

18              MR. HECKEL:  -- (indiscernible)

19              THE COURT:  -- ABL lender to press five-start and

20    join into this conversation and see if they're expecting

21    anything different than what I just said.  If you could press

22    five-star on your line, whoever has got the ABL lender.  From

23    the 214 area code, who do we have on the phone?

24              MR. LAMBERSON:  Yes, Your Honor.  This is Phillip

25    Lamberson on behalf of JPMorgan, the ABL agent.

1          The language that's in the order was negotiated with

2     the Debtors.  The intent is not, though, to create an

3     administrative claim or change the priority of the ABL

4     facility.  The -- you know, technically, the Debtor here is a

5     loan party under the facility, which effectively means it's a

6     guarantor.  The overall intent is for the ABL facility to

7     continue in place (indiscernible) services (indiscernible)

8     partnership is the actual borrower and the borrower

9     representative, so it's the party that actually can make the

10    draws.

11         The main agreement we have with the Debtors is that

12    they will not draw on the facility -- in other words, it's not

13    a DIP facility -- and they will (indiscernible) proceeds of

14    the facility -- again, in other words, it's not a DIP

15    facility.  But because it's a Debtor and it's a guarantor

16    (indiscernible) guarantor, we just wanted assurance that its

17    obligations under the agreement continue and that the

18    functioning of the ABL lending continue.

19              THE COURT:  So do you --

20              MR. LAMBERSON:  It's not --

21              THE COURT:  -- see the area --

22              MR. LAMBERSON:  -- at all --

23              THE COURT:  -- that I have marked in --

24              MR. LAMBERSON:  -- to create a --

25              THE COURT:  The area I have marked in blue there

1      seems inconsistent with the following sentence and with what

2      you've just said.  But I have a feeling I may misunderstand.

3                  MR. LAMBERSON:  Uh-huh.

4                  THE COURT:  So what does -- why are we talking about

5      advances made under the facility if there won't be any

6      advances made under the facility.

7                  MR. LAMBERSON:  Right.  So the intent of the

8      language was to cover advances not made to the borrower

9      (indiscernible) I'm sorry, not -- advances made to the Debtor

10     -- I'm sorry -- but advances made to the borrower.  In other

11     words, the facility isn't going to be static, money is going

12     to continue to be lent under the facility, and the Debtor's

13     obligations would continue in connection with that.

14                 THE COURT:  So I'm not being difficult.  I don't

15     understand and I just -- I need to understand.  So let's

16     assume that a nonDebtor borrows under the ABL facility.  Will

17     the Debtor have --

18                 MR. LAMBERSON:  Uh-huh.

19                 THE COURT:  -- an administrative obligation under

20     that facility at that point?

21                 MR. LAMBERSON:  The only obligation that it has is

22     if -- its pre-petition obligations under the ABL facility,

23     which are secured, but they would not necessarily be an

24     administrative claim.

25                 THE COURT:  Well, is it secured by the Debtor's

1       assets or it's secured by somebody else's assets?

2               MR. LAMBERSON:  It's both.  It's secured by

3       nonDebtor assets and also Debtor assets.

4               THE COURT:  And let me assume -- and I suspect that

5       my assumption is going to be false, but I just want to assume

6       for a minute that you don't have any security because you

7       didn't file a UCC.  So just give me that assumption for a

8       minute.  Am I giving you something more here --

9               MR. LAMBERSON:  Uh-huh.

10              THE COURT:  -- that what you already have?  Because

11      I only want you to have whatever you have and not something

12      more than what you have.

13              MR. LAMBERSON:  That's not the intent.  The intent

14      is not to provide any rights beyond the pre-petition rights.

15      Again, it's just to cover the idea that there is an existing

16      facility that covers a borrower and various guarantors.  And

17      one of the -- one of the guarantors, my borrower, another

18      party that draws, is the Debtor.

19              THE COURT:  Let me put --

20              MR. LAMBERSON:  We're not trying --

21              THE COURT:  -- put some language in --

22              MR. LAMBERSON:  -- to enhance our rights.

23              THE COURT:  Yeah, let me put some language in and

24      see if this works for all the parties.

25          (Pause in proceedings)

1          THE COURT:  I am not trying to change your deal; I'm

2     trying to write down what I think I've heard.  Is that right?

3          MR. LAMBERSON:  Yes, I think that's correct, Your

4     Honor.  I'm just thinking (indiscernible) on the screen.

5     Yeah, Your Honor, that's acceptable to JPMorgan.

6          THE COURT:  Does that cause any heartburn to any

7     other party today?

8        (No verbal response)

9          THE COURT:  All right.  Thank you.  I just wanted to

10    be sure I understand what we're doing.  I need to clean up the

11    PDF a little bit.

12         UNIDENTIFIED:  There's a typo, Your Honor, on the

13    (indiscernible)

14         THE COURT:  All right.

15         UNIDENTIFIED:  On the last line there.

16       (Pause in proceedings)

17         THE COURT:  All right.  Is there anyone else that

18    wishes to address the substance or the form of this order.

19    Mr. Nguyen, can I get you to click in for me, please, sir?

20    Good afternoon, Mr. Nguyen.

21         MR. NGUYEN:  Can you hear me, Your Honor?

22         THE COURT:  I can.  Thank you.

23         MR. NGUYEN:  Good afternoon, Your Honor.  Ha Nguyen

24    for the U.S. Trustee.

25         THE COURT:  Thank you.  Mr. Nguyen, do we need to

1    set a final hearing on this, or can we say only that, you

2    know, this order remains in effect for not more than 90 days

3    and further relief can be sought?

4               MR. NGUYEN:  Your Honor, I think that would be fine

5    because we're heading to confirmation within the next two

6    weeks or so.  I don't think we need a final hearing.

7               THE COURT:  Does it work for the Debtors, Mr. Singh,

8    to just make it a ninety-day order; and then, if you want

9    something else, file something else, so that we're not all

10   preparing for another hearing that it looks like --

11              MR. SINGH:  Yes, that --

12              THE COURT:  -- we don't need?  Okay.

13              MR. SINGH:  Absolutely, Your Honor.

14        (Pause in proceedings)

15              THE COURT:  All right.  Any objection to the form or

16   substance of the now final order authorizing this to occur for

17   90 days?

18        (No verbal response)

19              THE COURT:  Okay.

20        (Pause in proceedings)

21              THE COURT:  All right.  That order will be docketed

22   momentarily.

23              Where do you want to go next?

24              MR. HECKEL:  Thank you, Your Honor.  Ms. Lewis is

25   going to handle the next motion.

1           THE COURT:  All right.  Ms. Lewis?  Good afternoon,

2     Ms. Lewis.

3           MS. LEWIS:  Good afternoon, Your Honor.  Can you

4     hear me all right?

5           THE COURT:  I can.  I'm having a little trouble

6     getting to the right screen.  There we -- now I can even see

7     you, Ms. Lewis.  Good afternoon.

8           MS. LEWIS:  Okay.  Great.  Good afternoon, Your

9     Honor.  For the record, Katherine Lewis from Weil, Gotshal &

10    Manges, proposed counsel to the Debtor.  I'd like to echo my

11    colleagues' sentiments earlier and just thank you for making

12    time for us this afternoon.  And hopefully, the last two

13    motions are pretty quick.

14          I'll be handling Agenda Items 2 and 3, the Debtor's

15    NOL motion and then the scheduling motion.

16          First, the NOL motion, which can be found at Agenda

17    Item Number 2, Docket Number 19.  Your Honor, pursuant to this

18    motion, the Debtor seeks to establish procedures to protect

19    the potential value of the Debtor's tax net operating loss

20    carryforwards and certain other tax attributes.

21          Before I go into the detail of the relief requested,

22    let me start by saying -- and Mr. Singh (indiscernible) at the

23    beginning of the presentation -- you know, that we've done our

24    best to make sure all parties impacted by the relief requested

25    in the motions today, including this motion, have received

1        adequate notice of it, and we're confident they have.

2                The Debtors are privately held companies, so the

3        universe of parties that would be impacted by the relief

4        requested in this motion is relatively narrow.  In particular,

5        the parties this motion primarily impacts are the company's

6        equity sponsor Owner Resource Group and the minority indirect

7        interest holders, the cap parties [sic].  Both received notice

8        of this motion -- of this motion both with overnight mail and

9        electronic mail.

10               THE COURT:  So --

11               MS. LEWIS:  Not only --

12               THE COURT:  Let me just --

13               MS. LEWIS:  -- (indiscernible)

14               THE COURT:  I want to interrupt you on this one for

15       a minute.

16               MS. LEWIS:  Of course.

17               THE COURT:  I know -- I thought that everyone had

18       consented to this, as opposed to just sending notice of it.

19       There's a vast difference to me, in terms of what I'm prepared

20       to today, if this is done on notice, rather than on  actual

21       consent.  But I thought --

22               MS. LEWIS:  Understood --

23               THE COURT:  -- every equity --

24               MS. LEWIS:  -- Your Honor.

25               THE COURT:  I thought every equity holder was signed

1    up to the deal, and that the purpose of this was so that the

2    deal became an order, but that the deal has already been made

3    that no one is going to dispose of their stock.  And I just --

4    I need to know that, rather than notice of it, I think.

5           MS. LEWIS:  Of course.  That's where I was going

6    next, Your Honor.  Not only did the parties receive notice,

7    but yesterday morning, we executed a settlement and release

8    agreement with the direct and indirect equity holders of the

9    company, pursuant to which they agreed not to take the

10   actions; in addition to supporting the plan and not objecting

11   to the plan, they agreed not to take the actions, you know,

12   that we seek to prevent being taken, at least without, you

13   know, the Debtor having some sense or control or knowledge

14   over the actions occurring in this motion.

15           So they are aware of the motion, they are supportive

16   of it and have agreed to the relief requested.  The reason we

17   continued -- we decided to continue to file the motion is

18   really a prophylactic, a belt-and-suspenders measure, in the

19   event that -- and we don't anticipate this happening, but in

20   the event the settlement agreement were to be terminated or

21   someone were to breach the agreement, even just inadvertently.

22   The Debtors would like to have the order entered just out of

23   an abundance of caution.

24           But you are correct that everyone that this motion -

25   - that we expect to be impacted by it has signed up to the

1    support agreement, they have been noticed.  So, you know,

2    there's no one out there that we're aware of that would be

3    impacted that hasn't otherwise (indiscernible) and hasn't

4    affirmatively, you know, agreed to support --

5              THE COURT:  All right.  So --

6              MS. LEWIS:  -- this relief.

7              THE COURT:  -- I'm going to -- I'm going to pick a

8    few more words with you because, again, this really matters to

9    me.  I want to be sure that every equity holder, not everyone

10   that you expect to be affected by this, has agreed to it.  And

11   my -- this only affects equity holders.  And my understanding

12   is every equity holders has actually agreed to it, whether or

13   not you expect them to be affected by it.

14             MS. LEWIS:  Understood.  Your Honor, so there is a

15   small subset of individual equity holders, they're primarily

16   senior management who hold small -- a small number of shares

17   up at the holdings level, so not directly at our Debtor, at

18   the entity above.  You know, we don't believe that they would

19   be impacted by the motion because they don't exceed the

20   threshold established by it.  But those parties are also

21   (indiscernible) if that answers your question.

22             THE COURT:  Yeah.  I take --

23             MS. LEWIS:  (Indiscernible)

24             THE COURT:  -- the distinction --

25             MS. LEWIS:  Other than that --

1        THE COURT:  -- (indiscernible) thank you.

2        MS. LEWIS:  Yes.  Other than those individuals, yes,

3    everyone is signed up.

4        THE COURT:  Let me hear from any equity holder that

5    believes that, in fact, they have not agreed to this or that

6    we shouldn't issue this order.  Please press five-star.

7        (No verbal response)

8        THE COURT:  Is there anyone that opposes the relief

9    granted in the order?

10        (No verbal response)

11        THE COURT:  All right.  Ms. Lewis, what I want to do

12    is to get you to upload, overnight if you want, whatever hurry

13    you're in -- it can be tomorrow, it can be the next day -- an

14    order without all of your preamble, and replace all of the

15    preamble with:

16        "By agreement of all affected holders of equity in

17    the Debtors, it is ordered ..."

18        That kind of an intro.  You can change that language

19    a little bit, but you get the idea.  I don't want to be making

20    findings about notice, I don't want to be doing all of that.

21    I want you telling me everybody has agreed to it and this is

22    simply the glue that binds that agreement into effect, in case

23    somebody makes, as you said, an inadvertent error in

24    compliance with it or decides to breach it.  I'm perfectly

25    happy binding somebody that's agreed to it not to breach it,

1   but I don't want to -- I'm doing this based on their

2   agreement.

3          MS. LEWIS:  Yes, sir.  Understood.  We will revise

4   the order and upload it accordingly.

5          THE COURT:  Does that work for you?

6          MS. LEWIS:  Yes.

7          THE COURT:  Okay.  Let's do it that way.  Just

8   upload one and let Ms. Do know when it's uploaded and we'll

9   get it signed.

10          MS. LEWIS:  Thank you.

11          All right.  Moving on to the next item on the

12   Agenda, the scheduling motion, which is Agenda Item Number 3,

13   Docket Number 18.

14          Your Honor, pursuant to this motion, the Debtor is

15   seeking approval of its solicitation and notices procedures

16   and are requesting the Court establish certain key dates an

17   deadlines for the Chapter 11 case.  Mr. Singh previewed those

18   for you at the beginning of the presentation.  I'm happy to

19   hit on them again.

20          But really, the dates can be summarized on Page 3 of

21   the motion.  If you look, there's a chart there that outlines

22   all of the dates, including when we commence solicitation, the

23   voting deadline, a proposed objection deadline, and deadline

24   to opt out of the third-party release.

25          And then the only date that would really need to be

36

1    tweaked in that chart would be the date for the combined

2    hearing -- or I'm sorry -- the time for the combined hearing

3    to reflect the hearing at 11 a.m., as opposed to at 2 p.m.

4         Your Honor, you know, the Debtor -- as Mr. Singh

5    noted, the Debtor is party to a restructuring support

6    agreement.  It is expected to comply with certain milestones.

7    And the goal is certainly to expedite the Debtor's time in

8    Chapter 11.  We believe the time line here is more than

9    appropriate, in light of the fully consensual nature of the

10   case and the robust noticing that has been provided to all

11   creditors and parties-in-interest.

12        (Indiscernible) just to give you an overview of what

13   that looks like, it's set forth in the motion.  But all

14   parties-in-interest received adequate notice of the

15   anticipated commencement of this case, the fact that the

16   Debtor would be seeking to schedule a combined hearing on

17   November 22nd, as well as the proposed objective -- objections

18   -- excuse me -- and opt-out deadline.

19        Notices were distributed on October 16th, in

20   connection with launch of solicitation.  This means that

21   notice of the plan objection deadline will have been provided

22   to parties 23 priors to the petition date, 31 days before the

23   proposed objection deadline, and 37 days before the proposed

24   date for the confirm -- excuse me -- for the confirmation

25   hearing.

1          In addition to this --

2          THE COURT:  So why wouldn't I --

3          MS. LEWIS:  -- to the --

4          THE COURT:  -- I move that out --

5          MS. LEWIS:  -- combined notice --

6          THE COURT:  Why wouldn't I move that on out until

7     the 19th?

8          MS. LEWIS:  I'm sorry, Your Honor.  I'm not

9     following your question.

10          THE COURT:  Why wouldn't I move the November 16th --

11          MS. LEWIS:  The deadline --

12          THE COURT:  -- deadlines out to November 19th?

13          MS. LEWIS:  You know, Your Honor, I don't think we

14     would have any problem with that, if we were permitted to

15     still have our combined hearing on the 22nd.  I think the

16     dates we proposed were just, in the odd event that we received

17     a response, we wanted to provide time to prepare a response to

18     any objections or responses that we received.  But we'll

19     otherwise be prepared to file our brief and we'll work very

20     quickly needed -- although we don't expect it -- to prepare --

21          THE COURT:  I think it makes more --

22          MS. LEWIS:  -- (indiscernible)

23          THE COURT:  -- sense to put the burden on you -- I

24     think it makes more sense to put the burden on you to work

25     hard than the burden on somebody else to get their objection

1      faster, so --

2              MS. LEWIS:  Well, we're happy to --

3              THE COURT:  -- I'm going to set the 19th at noon,

4      and hope you still enjoy your weekend, but --

5              MS. LEWIS:  I don't have --

6              THE COURT:  -- I think that's a bit more the fair

7      thing to do.

8              MS. LEWIS:  Of course, Your Honor.  Thank you.  We

9      will abide.

10             Oh, in addition to the (indiscernible) notice

11     (indiscernible) a little bit more information on the notice

12     that was provided, or I can just, you know, ask that the Court

13     enter the order with the dates revised, as we've just -- or

14     the dates and times revised, as we've just discussed.

15             But I guess, just for the record, the Debtor did,

16     out of an abundance of caution, also publish the combined

17     notice in the Wall Street Journal and the Houston Chronicle,

18     and intends to provide supplemental notice of the date and

19     time of the confirmation hearing, which we will revise to

20     reflect the new time and the new objection deadline

21     (indiscernible) sending out this evening or tomorrow or as

22     soon as the order is entered, we'll put that together and get

23     that out, so folks will have plenty of notice of all the dates

24     and deadlines here in the case.

25             Unless Your Honor has any further questions, the

1    Debtor would respectfully ask that the order be entered with

2    the dates revised, as discussed.

3            THE COURT:  All right.  Let me hear from anyone else

4    that has anything to say on this matter or wishes to object to

5    it in any way.

6        (No verbal response)

7            THE COURT:  Mr. Nguyen, are you all right with the

8    provision that waives the 341 meeting of creditors, unless we

9    don't confirm?

10           MR. NGUYEN:  Yes, Your Honor.  Usually, what we do

11   is we have that extra date, just in case we don't get the

12   confirmation.  There's a January 7th, 2022 deadline for it, so

13   I'm okay with that.

14           THE COURT:  All right.  Thank you.

15           So, Ms. Lewis, what I would suggest to do is I've

16   already changed the dates in the draft order.  You can conform

17   the attachments.  I haven't read the attachments and I need to

18   read them.  I'm authorizing you to conform them.  I'll read

19   them when I step off the bench.  I'll sign an order with

20   whatever minor changes I might, you know, need, once I read

21   those.  But I don't want to pretend I've read something I

22   haven't read, and I haven't read that.  So I need to read the

23   attachments.

24           MS. LEWIS:  Okay.  Understood.  Thank you so much,

25   Your Honor.

1          THE COURT:  Thank you.  But we'll get that done this

2     afternoon.  You don't need to file anything new on that one.

3          MS. LEWIS:  Okay.

4          THE COURT:  Okay?  What else do you want to do,

5     Ms. Lewis?

6          MS. LEWIS:  Your Honor, that was the last thing on

7     the Agenda.  So I believe that covers it, unless there's

8     anyone else that has anything or if you have any additional

9     questions.

10          THE COURT:  Let me hear from anyone else that has

11     anything, if you want to make any statements today,

12     reservations, anything that you need to do; or, otherwise,

13     I'll see you guys on the 22nd at 11:00 o'clock, unless some

14     emergency arises.

15          Mr. Goldstein is looking uncharacteristically calm,

16     I don't know what's going on there, but let him continue to

17     look that way.  Everything okay with your client,

18     Mr. Goldstein?  Let me get you active here.  Mr. Goldstein,

19     are you doing all right this afternoon?

20          MR. GOLDSTEIN:  I'm doing great.  Jayme Goldstein on

21     behalf of Benefit Street Partners, as agent and lender.

22          Your Honor, I think the Weil team has done a

23     wonderful job and I'm fully in support of everything we've

24     heard today.  I'm just smiling because this was a pretty easy

25     hearing, so thank you very much.

1          THE COURT:  All right.  We reopened today and we

2     held a confirmation hearing at 3:00 o'clock this afternoon,

3     where parties were here live and we also had parties on video,

4     and it worked out great.  It was a short hearing, but it was a

5     big case.  And I don't know whether you all are going to come

6     in for the hearing on the 22nd or not.  First-day hearings are

7     mandatory virtual only, which I think is permanent for us.

8     But now, from this point forward in the case, everything is

9     hybrid and everyone can choose to either be here or not be

10    here.

11          At the prior hearing, we just had -- we had all

12    sorts of situations, where some people were here and some

13    people were on the phone.  We had lead counsel here and we had

14    other counsel, you know, conducting in remotely from the same

15    firms.  So it was every mix that you could have hoped for.

16          But as you all move through our new hybrid world, I

17    hope that you will contact Judge Jones or contact me directly

18    if, on an administrative basis, you think we can improve what

19    we're doing.  Our goal is to make this work for everybody.

20    And if we have done something that impairs, rather than

21    enhances people's rights in cases, that is not what we want to

22    do.  So let us know.  Just you can call us directly on an

23    administrative issue like that.

24          THE COURT:  With that said, I think I will go ahead

25    and adjourn and I'll see you on the 22nd.  Thank you.

1              MR. SINGH:  Thank you, Your Honor.

2              THE COURT:  Thank you.

3              COUNSEL:  Thank you, Your Honor.  Thank you, Your

4      Honor.

5          (Proceedings concluded at 4:55 p.m.)

6                          *  *  *  *  *

7              *I certify that the foregoing is a correct transcript*

8      *to the best of my ability produced from the electronic sound*

9      *recording of the proceedings in the above-entitled matter.*

10       */S./  MARY D. HENRY*

11     *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

12     *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

13     *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

14     *JTT TRANSCRIPT #64817*

15     *DATE FILED:  NOVEMBER 16, 2021*