United States Bankruptcy Court
Southern District of Texas

**ENTERED**

November 22, 2021

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ORG GC MIDCO, LLC | § | Case No. 21-90015 (MI) |
| | § | |
| Debtor.[1] | § | |
| | § | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**
**(I) APPROVING DISCLOSURE STATEMENT AND (II) CONFIRMING**
**AMENDED PREPACKAGED CHAPTER 11 PLAN OF ORG GC MIDCO, LLC**

WHEREAS, on November 8, 2021, ORG GC Midco, LLC ("**Midco**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), as a debtor and debtor in possession (the "**Debtor**" or "**Midco**" and, collectively, with its direct and indirect subsidiaries, the "**Company**"), proposed and filed the *Prepackaged Chapter 11 Plan of ORG GC Midco, LLC* [Docket No. 7], and on November 18, 2021 filed the *Amended Prepackaged Chapter 11 Plan of ORG Midco LLC* [Docket No. 85] (collectively, and as supplemented and as otherwise amended in accordance with the terms thereof and this Order, the "**Plan**"),[2] annexed hereto as **Exhibit A**, and on November 8, 2021 filed the *Disclosure Statement for Prepackaged Chapter 11 Plan of ORG GC Midco, LLC* [Docket No. 6] (as amended, modified, or supplemented from time to time, the "**Disclosure Statement**");

WHEREAS, on October 16, 2021, the Debtor commenced solicitation (the "**Prepetition Solicitation**") of votes to accept or reject the Plan by duly causing its claims,

---

[1]   The last four digits of the federal tax identification number are 1740.  The Debtor's mailing address is 6330 Gulfton Street, Houston, Texas 77081.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

noticing, and solicitation agent, Bankruptcy Management Solutions, Inc. d/b/a/ Stretto ("**Stretto**"), to transmit, as applicable, the Disclosure Statement, the Plan, the Solicitation Packages, the Notice of Non-Voting Status (Unimpaired Claims), the Notice of Non-Voting Status (Midco Equity Interests), and the Opt-Out Form (each as defined in the Scheduling Order (as defined herein)), to holders of Claims and Interests, as set forth in: (i) *Certificate of Service*, filed on November 9, 2021 [Docket No. 34] (the "**Solicitation Affidavit**"), as well as the *Declaration of Angela Tsai of Bankruptcy Management Solutions d/b/a Stretto Regarding Solicitation of Votes and Tabulation of Ballots Cast on the Prepackaged Chapter 11 Plan of ORG GC Midco, LLC*, filed on November 8, 2021 [Docket No. 23] (the "**Tabulation Declaration**");

WHEREAS, on October 21, 2021, the Debtor, through Stretto, caused the Combined Notice (as defined in the Scheduling Order) to be published in the *Wall Street Journal (National Edition)* and the *Houston Chronicle*, as set forth in the *Certificate Service*, filed on November 17, 2021 [Docket No. 81] and *Certificate of Service*, filed on November 17, 2021 [Docket No. 82] (collectively, the "**Publication Affidavit**");

WHEREAS, the deadline for holders, as of October 15, 2021 (the "**Voting Record Date**"), of Claims in Class 3 (Existing Term Loan Claims) (the "**Voting Class**"), to complete and submit their Ballots to accept or reject the Plan was November 1, 2021 at 4:00 p.m. (Prevailing Central Time) (the "**Voting Deadline**") for such Ballot to be deemed valid and included in the tabulation results;

WHEREAS, as set forth in the Tabulation Declaration, the Voting Class unanimously voted to accept the Plan;

WHEREAS, on November 8, 2021 (the "**Petition Date**"), the Debtor commenced this chapter 11 case (the "**Chapter 11 Case**") by filing a voluntary petition for relief under title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**");

WHEREAS, on the Petition Date, the Debtor filed the Plan Supplement [Docket No. 28] (as may be further amended or supplemented from time to time, including by *Notice of Filing of Amended Plan Supplement for the Amended Prepackaged Chapter 11 Plan of ORG GC Midco, LLC* [Docket No. 97], the "**Plan Supplement**");

WHEREAS, on November 9, 2021, after notice and hearing, this Court entered the *Order (I) Scheduling Combined Hearing to Consider (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Approving Solicitation Procedures and Form and Manner of Notice of Anticipated Commencement of Chapter 11 Case, Combined Hearing, and Objection Deadline; (III) Fixing Deadline to Object to Disclosure Statement and Plan; (IV) Conditionally (A) Directing the United States Trustee Not to Convene Section 341 Meeting and (B) Waiving Requirement of Filing Statement of Financial Affairs and Schedule of Assets and Liabilities; and (V) Granting Related Relief* [Docket No. 51] (the "**Scheduling Order**"), which, among other things, (i) scheduled the hearing to consider the adequacy of the Disclosure Statement and confirmation of the Plan for November 22, 2021 at 11:00 a.m. (Prevailing Central Time) (the "**Combined Hearing**"); (ii) established November 19, 2021 at noon (Prevailing Central Time) as the deadline to object to the adequacy of the Disclosure Statement or confirmation of the Plan (the "**Objection Deadline**"); (iii) established November 19, 2021 at noon (Prevailing Central Time) as the deadline to opt out of the third party releases set forth in section 10.6(b) of the Plan (the "**Opt-Out Deadline**"); (iv) approved notice of the Combined Hearing (the "**Combined Notice**"); (v) approved the solicitation, balloting, tabulation, and related activities undertaken by

3

the Debtor in connection with the Plan (collectively, the "**Solicitation Procedures**") and approved the form of Ballot; and (vi) approved the Debtor's proposed form and noticing of the supplemental notice of the Combined Hearing (the "**Supplemental Notice**");

WHEREAS, on November 10, 2021, the Debtor filed the Supplemental Notice [Docket No. 53] and served such notice on parties in interest, as set forth in the Certificate of *Service*, filed on November 11, 2021 [Docket No. 58] (the "**Supplemental Notice Affidavit**");

WHEREAS, on November 10, 2021, the Debtor also served the "Opt-Out Form," the form of which is annexed as Exhibit 3 to the Scheduling Order, upon the holders of Interests in Class 7 (Midco Equity Interests), as set forth in the *Certificate of Service*, filed on November 16, 2021 [Docket No. 78] (the "**Opt-Out Affidavit**");

WHEREAS, due and proper notice of the Combined Hearing was given to holders of Claims and Interests and all other parties in interest in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), and the Scheduling Order, as established by the affidavits of service, mailing, and publication filed with this Court, including the Solicitation Affidavits and the Publication Affidavits, and such notice being sufficient under the circumstances and no further notice being required;

WHEREAS, on November 18, 2021, the Debtor filed the (i) *Memorandum of Law in Support of (I) Approval of Disclosure Statement and (II) Confirmation of Amended Prepackaged Chapter 11 Plan of ORG GC Midco, LLC* [Docket No. 88], the (ii) *Declaration of Robert Wagstaff in Support of Confirmation of Amended Prepackaged Chapter 11 Plan of ORG GC Midco, LLC* [Docket No. 89], and (iii) the *Proposed Findings of Fact, Conclusions of Law,*

*and Order (I) Approving Disclosure Statement and (II) Confirming Amended Prepackaged Chapter 11 Plan of ORG GC Midco, LLC* [Docket No. 90];

WHEREAS, on November 22, 2021, this Court held the Combined Hearing;

WHEREAS, this Court has fully considered the entire record of the Combined Hearing;

WHEREAS, this Court has heard the arguments of counsel and considered the evidence presented, proffered, and adduced at the Combined Hearing;

WHEREAS, this Court is familiar with and has taken judicial notice of the entire record of this Chapter 11 Case; and

WHEREAS, no objections to final approval of the Disclosure Statement or confirmation of the Plan have been made.

NOW, THEREFORE, after due deliberation and sufficient cause appearing therefor, this Court hereby FINDS, DETERMINES, and CONCLUDES as follows:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.      <u>Findings of Fact and Conclusions of Law</u>.  The findings and conclusions set forth herein and in the record of the Combined Hearing constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the  following conclusions of law constitute findings of fact, they are adopted as such.

B.      <u>Jurisdiction, Venue, Core Proceeding, Eligibility for Relief</u>.  This Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. § 1334.  Final approval of the

Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtor is an eligible debtor under section 109 of the Bankruptcy Code.  The Debtor is a proper plan proponent under section 1121(a) of the Bankruptcy Code.

C.      Chapter 11 Petition.  On November 8, 2021, the Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtor is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Chapter 11 Case pursuant to section 1104 of the Bankruptcy Code.  No statutory committee of unsecured creditors or equity security holders has been appointed in this Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code.

D.      Modifications of the Plan.  Pursuant to and in compliance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor proposed certain modifications to the Plan as reflected herein and/or in modified or amended versions of the Plan and Plan Supplement filed with the Court prior to entry of this Order (collectively, the "**Plan Modifications**").  In accordance with Bankruptcy Rule 3019, the Plan Modifications do not (i) constitute material modifications of the Plan under section 1127 of the Bankruptcy Code, (ii) cause the Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code, (iii) materially and adversely change the treatment of any Claims or Interests, (iv) require re-solicitation of any holders of Claims or Interests, or (v) require that any such holders be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  Under the circumstances, the form and manner of notice of the proposed Plan Modifications are adequate,

and no other or further notice of the proposed Plan Modifications is necessary or required.  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the Plan Modifications.  No holder of a Claim that has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Plan Modifications.

E.  <u>Judicial Notice</u>.  This Court takes judicial notice of the docket of this Chapter 11 Case maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before this Court during the pendency of the Chapter 11 Case.  Any resolution of objections to the adequacy of the Disclosure Statement or confirmation of the Plan explained on the record at the Combined Hearing is hereby incorporated by reference.  All unresolved objections, statements, informal objections, and reservations of rights, if any, related to the Disclosure Statement, the Plan, or confirmation of the Plan are overruled on the merits and denied in their entirety.

F.  <u>Burden of Proof</u>.  Based on the record of this Chapter 11 Case, the Debtor has met the burden of proving each applicable element of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

G.  <u>Adequacy of Disclosure Statement</u>.  The Disclosure Statement (i) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy laws rule and regulations, including the Securities Act, and (ii) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Plan, and the transactions contemplated therein.

7

H.    <u>Solicitation</u>.  As described in and evidenced by the Solicitation Affidavits and the Tabulation Declaration, and as previously approved in the Scheduling Order, the Prepetition Solicitation in connection with the Solicitation Procedures, along with the Debtor's related activities (collectively, the "**Solicitation**"), were timely, adequate, appropriate, and sufficient under the circumstances.   The Solicitation (i) was conducted in good faith and (ii) complied with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Scheduling Order, and all other applicable non-bankruptcy rules, laws, and regulations applicable to the Solicitation.  The Released Parties and Exculpated Parties are entitled to the protection of section 1125(e) of the Bankruptcy Code.

I.    <u>Notice</u>.   As evidenced by the Solicitation Affidavits, the Publication Affidavits, and the Tabulation Declaration, all parties required to be given notice of the Combined Hearing (including the deadline for filing and serving objections to approval of the Disclosure Statement and confirmation of the Plan and to opt out of the Releases) have been given due, proper, adequate, timely, and sufficient notice of the Combined Hearing in accordance with the Solicitation Procedures and the Scheduling Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and all other applicable non-bankruptcy rules, laws, and regulations and such parties have had an opportunity to appear and be heard with respect thereto.  No other or further notice is or shall be required.

J.    <u>Tabulation</u>.  As described in the Voting Declaration, the Claims in Class 3 (Existing Term Loan Claims) are Impaired under the Plan and their respective holders have voted to accept the Plan in the numbers and amounts required by section 1126 of the Bankruptcy Code. All procedures used to tabulate the Ballots were fair, reasonable, and conducted in accordance with

the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Scheduling Order, and all other applicable non-bankruptcy rules, laws, and regulations.

K.    <u>Plan Supplement</u>.   The Debtor filed the Plan Supplement consisting of (i) the "New Board Disclosure"; (ii) the "New Holdco Limited Liability Company Agreement"; (iii) the "New Holdco Sub Limited Liability Company Agreement"; (iv) the "Restructuring Transaction Steps"; (v) the "Schedule of Rejected Contracts"; (vi) the "New 1L Facility"; and (vii) the "New 2L Facility."  All such materials comply with the terms of the Plan, and the filing and notice of such documents was good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Scheduling Order and all other applicable rules, laws, and regulations and no other or further notice is or shall be required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  The Debtor reserves the right to alter, amend, update, or modify the Plan Supplement prior to the Effective Date subject to the terms of this Order, the Restructuring Support Agreement, and the Definitive Documents.

L.    <u>Plan Proposed in Good Faith</u>.   The Debtor has proposed the Plan (and all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law. The Debtor's good faith is evident from the record of this Chapter 11 Case, the Disclosure Statement, the record of the Combined Hearing, and other proceedings held in this Chapter 11 Case.  The Chapter 11 Case was filed and the Plan was proposed with the legitimate purpose of allowing the Debtor to implement the Restructuring, reorganize and emerge from bankruptcy with a capital and organizational structure that will allow it to conduct its business and satisfy its obligations with sufficient liquidity and capital resources.  The Plan and all documents necessary to effectuate the Plan were negotiated at arm's length among the Debtor, the Consenting Lenders,

and their respective advisors.  The Plan satisfies the requirements of section 1129(a)(3) of the

Bankruptcy Code.

        M.      <u>Section 1129(d)</u>.  The principal purpose of the Plan is not the avoidance of

taxes or the avoidance of the application of section 5 of the Securities Act, and no governmental

entity has objected to the confirmation of the Plan on such grounds.  The Plan, therefore, satisfies

the requirements for confirmation under section 1129(d) of the Bankruptcy Code.

        N.      <u>Bankruptcy Rule 3016(a)</u>.  In accordance with Bankruptcy Rule 3016, the

Plan is dated and identifies the Debtor as the proponent of the Plan.  The discharge, release,

injunction and exculpation provisions of the Plan are set forth in bold, thereby complying with

Bankruptcy Rule 3016(c).

        O.      <u>Best Interest of Creditors</u>.   The liquidation analysis provided in the

Disclosure Statement and the other evidence presented, proffered, or adduced at the Combined

Hearing (i) are persuasive and credible, (ii) are based on appropriate assumptions and valid

analysis and methodology, (iii) have not been controverted by other evidence, and (iv) establish

that each holder of an Impaired Claim or Impaired Interest either has accepted the Plan or will

receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of

the Effective Date, that is not less than the amount that such holder would receive or retain if the

Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.  The Plan satisfies

the requirements of section 1129(a)(7) of the Bankruptcy Code.

        P.      <u>Feasibility</u>.  The information in the Disclosure Statement and the Wagstaff

Declaration is (i) persuasive and credible, (ii) has not been controverted by other evidence, and

(iii) together with the record of the Chapter 11 Case and the evidence presented at the Combined

Hearing, establishes that the Plan is feasible, that there is a reasonable prospect of the Reorganized

Debtor, New Holdco, and New Holdco Sub, as applicable, being able to meet their respective financial obligations under the Plan and their business in the ordinary course, and that the incurrence of the obligations contemplated by the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Company, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

Q.    Valuation.   Based on the valuation analysis set forth in the Disclosure Statement and the testimony presented, proffered, or adduced at the Combined Hearing, which this Court has determined to be credible, persuasive, and based on appropriate assumptions and valid analysis and methodology, this Court finds that the valuation implied by the Restructuring is the best measure of the Reorganized Debtor's value given the facts and circumstances of this Chapter 11 Case.

R.    Injunctions, Releases, and Exculpation.   The injunctions, releases, and exculpation for the benefit of the Released Parties and Exculpated Parties contained in Article X of the Plan are essential components of the Plan.  The releases of non-Debtors contained therein are consensual in that all Releasing Parties were given due and adequate notice thereof and sufficient opportunity to elect to opt out of such releases.  Accordingly, the releases contained in Article X of the Plan are (i) consistent with and permissible under applicable law, (ii) given in exchange for good and valuable consideration provided by the Released Parties, (iii) in the best interests of the Debtor, its Estate, and all parties in interest, and (iv) fair, equitable, and reasonable. The exculpation contained in Article X of the Plan is appropriately tailored to the circumstances of this Chapter 11 Case.

S.    Good Faith.   The Debtor and the Released Parties have been and will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements,

11

transactions, and transfers contemplated thereby and (ii) take any other actions authorized and directed by this Order and the Plan.

## ORDER

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1.      Supplemental Notice.  The Supplemental Notice complied with the terms of the Solicitation Procedures and the Scheduling Order, was appropriate and satisfactory based upon the circumstances of this Chapter 11 Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Guidelines, and the Bankruptcy Local Rules.

2.      Approval of Disclosure Statement.  The Disclosure Statement is approved as having adequate information as contemplated by section 1125(a)(1) of the Bankruptcy Code.

3.      Solicitation.  The Solicitation Procedures, as approved by the Scheduling Order, and any related actions taken in connection therewith complied with the Scheduling Order, were appropriate and satisfactory based upon the circumstances of this Chapter 11 Case, and complied with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

4.      Ballot.  The form of Ballot for Class 3 (Existing Term Loan Claims), as approved by the Scheduling Order, was adequate and appropriate, in compliance with Bankruptcy Rule 3018(c), and substantially conformed to Official Form B 314 in all respects.

5.      Solicitation of Disclosure Statement.  To the extent that the Debtor's Solicitation was deemed to constitute an offer of new securities, such Solicitation is exempt from registration pursuant to Section 4(a)(2) and/or Regulation D of the Securities Act.  The Debtor has complied with the requirements of Section 4(a)(2) and/or Regulation D of the Securities Act as the prepetition solicitation of acceptances would constitute a private placement of securities.  The

solicitation was made only to creditors in Class 3 (Existing Term Loan Claims) who are Eligible Holders, and such creditors certified that they belong to such category prior to the commencement of the Prepetition Solicitation in connection with the execution of the Restructuring Structuring Agreement. Therefore, the requirements of section 1126(b)(1) of the Bankruptcy Code are inapplicable to the Debtor's prepetition solicitation.

6.      <u>Confirmation of Plan</u>.  The Plan and each of its provisions is confirmed pursuant to section 1129 of the Bankruptcy Code.  The documents contained in the Plan Supplement or otherwise contemplated by the Plan (collectively, the "**Plan Documents**"), including the (i) the "New Board Disclosure"; (ii) the "New Holdco Limited Liability Company Agreement"; (iii) the "New Holdco Sub Limited Liability Company Agreement"; (iv) the "Restructuring Transaction Steps"; (v) the "Schedule of Rejected Contracts"; (vi) the "New 1L Facility"; (vii) the "New 2L Facility."; and (viii) the Settlement and Release Agreement, are approved, and the Debtor is authorized to execute and deliver such documents and perform its obligations thereunder.  The terms of the Plan and the Plan Documents are incorporated herein by reference and are an integral part of this Order.  The terms of the Plan, the Plan Documents, all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date.  Subject to the terms of the Plan and the Restructuring Support Agreement, the Debtor reserves the right to alter, amend, update, or modify the Plan and the Plan Documents prior to the Effective Date without the need for further order or authorization of the Court.  The failure to specifically include or refer to any particular article, section, or provision of the Plan in this Order shall not diminish or impair the effectiveness or enforceability of such article, section, or provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

7.    <u>Objections</u>.  No  objections (but one reservations of rights) to approval of the Disclosure Statement or confirmation of the Plan or any other responses or reservations of rights with respect thereto have been made.  The sole reservation was satisfied and waived.

8.    <u>Binding Effect</u>.  As of the Effective Date, the Plan (including the Plan Documents) and this Order shall be  immediately effective and enforceable and shall bind the Debtor, the Reorganized Debtor, New Holdco, New Holdco Sub and all holders of Claims against and Interests in the Debtor and their respective successors and assigns, whether or not any such holders were (i) Impaired or Unimpaired under the Plan, (ii) deemed to accept or reject the Plan, (iii) failed to vote to accept or reject the Plan, or (iv) voted to reject the Plan.  The Plan (including the Plan Documents) and this Order shall also bind all Entities that are party to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, each Entity acquiring  property  under  the  Plan  and  any  and  all  non-Debtor  parties  to  Executory Contracts and Unexpired Leases with the Debtor.

9.    <u>No Action</u>.  Pursuant to the appropriate provisions of the corporate law of the relevant states, other applicable non-bankruptcy law, and section 1142(b) of the Bankruptcy Code, no action of the respective managers or stockholders of the Debtor shall be required to authorize the Debtor to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Plan Documents and any contract, instrument, or other  document  to  be  executed,  delivered,  adopted,  or  amended  in  connection  with  the implementation of the Plan and the Plan Documents and the appointment of the members of the board of managers of New Holdco.

10.     <u>Vesting of Assets</u>.  Except as otherwise provided herein, in the Plan or in any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, the Plan or the Plan Documents, on the Effective Date, all property in the Estate, and any property acquired by the Debtor pursuant to the Plan shall vest in New Holdco and, in turn, New Holdco Sub, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, New Holdco, New Holdco Sub, and the Reorganized Debtor may operate their respective businesses and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, subject only to those restrictions expressly imposed by the Plan or this Order as well as the documents and instruments executed and delivered in connection therewith, including the documents, exhibits, instruments and other materials comprising the Plan Supplement.

11.     <u>Implementation of Plan</u>.  After the Confirmation Date (but subject to satisfaction or waiver of the conditions set forth in Section 9.2 of the Plan), the Debtor, the Reorganized Debtor, New Holdco, and New Holdco Sub, as applicable, and the appropriate officers, representatives, and members of the boards of managers thereof shall be authorized to and may consummate the Plan and issue, execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Documents, and take such other actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and all other actions delineated in Article V of the Plan or otherwise contemplated by the Plan.

12.     <u>Restructuring Transactions</u>.  On or before the Effective Date or as soon as reasonably practicable thereafter, the Debtor, the Reorganized Debtor, New Holdco, and New

Holdco Sub, as applicable, may take all actions consistent with this Order, the Plan and the Plan Documents as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring, and all parties receiving distributions under or otherwise affected by the terms, provisions, restrictions and conditions contained in the Plan and/or any Plan Documents shall be deemed to have received sufficient and adequate notice of, and to have actual knowledge of, all such terms, provisions, restrictions and conditions, such that they are subject to all such terms, provisions, restrictions, and conditions. The Reorganized Debtor and New Holdco, as applicable, are authorized to issue the New Equity pursuant to and as set forth in the Plan and the Plan Documents.

13.     Effectiveness of All Actions.   Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified (without any requirement for further action by holders of Claims or Interests, directors, managers, or officers of the Debtor, the Reorganized Debtor or any other Entity).  All matters provided for in the Plan involving the corporate structure of the Debtor or the Reorganized Debtor, and any corporate action required by New Holdco, New Holdco Sub, the Reorganized Debtor and/or the Debtor in connection with the Plan, shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by holders of Claims or Interests, the security holders, directors, managers, authorized persons, or officers of the Reorganized Debtor and/or the Debtor.  To the extent that, under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the equity holders, members, managers or directors of the Debtor, New Holdco, New Holdco Sub or the Reorganized Debtor, this Order shall, pursuant to section 1142 of the Bankruptcy Code and applicable law, constitute such consent or approval, and such actions are

deemed to have been taken by unanimous action of the directors, managers, members and equity holders of the Debtor, New Holdco, New Holdco Sub or the Reorganized Debtor, as applicable.

14.     Securities Exemptions.  The offer, issuance, sale and distribution of the New Equity under the Plan shall be exempt, pursuant to section 1145 of the Bankruptcy Code, without further act or action by any Entity, from the registration and prospectus delivery requirements under (i) the Securities Act of 1933, as amended (including the registration requirements of Section 5 thereunder), and all rules and regulations promulgated thereunder and (ii) any federal, state or local law requiring registration and/or delivery of a prospectus for the offer, issuance, sale or distribution of Securities.  The New Equity will be freely tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act of 1933; (ii) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (iii) the restrictions, if any, on the transferability of the New Equity contained in the New Organizational Documents; and (iv) applicable regulatory approval.

15.     Exit Facilities.

a.     The Exit ABL Facility Documents, the Exit Term Loan Facility Documents, and the New Intercreditor Agreements are hereby approved (including all transactions, actions, and undertakings contemplated thereby), and on the Effective Date, New Holdco and the New Holdco Sub are authorized to and shall enter into the Exit ABL Facility Documents, the Exit Term Loan Facility Documents, the New Intercreditor Agreements, and all other documents, certificates, assignments, instruments, notes, agreements, guaranties, and collateral documents contemplated thereby (collectively, the "**Exit Facility Documents**") without

further notice, act, or action or order of the Bankruptcy Court and without regard to any applicable law, regulation, order, rule, or need for any vote, consent, authorization, or approval of any Person or Persons, and such documents shall become effective in accordance with their terms.

b.      The terms of the Exit Facility Documents are fair and reasonable, and the Exit Facility Documents were negotiated in good faith and at arm's length.

c.      The Exit Facility Documents shall constitute legal, valid, binding, and authorized joint and several obligations of New Holdco Sub enforceable in accordance with their respective terms, and such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under any applicable law, the Plan, or this Order.  On the Effective Date, all Liens, assignments, mortgages and security interests granted pursuant to the Exit Facility Documents shall be (i) deemed to be granted, (ii) valid, binding, automatically perfected (to the extent provided in the security documents), and enforceable Liens and mortgages on, and security interests in, the personal and real property described in and subject to the Exit Facility Documents, with the priorities established in respect thereof under the Exit Facility Documents and/or applicable non-bankruptcy law, as applicable and (iii) not subject to discharge, impairment, release, avoidance, recharacterization, or subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or under any applicable law.

d.      Notwithstanding that no filings, recordings, approvals, notices, or consents of any kind are required for the Liens and security interests granted in accordance with the Exit Facility Documents, each of the Exit Agents, as applicable, is authorized to file, with the appropriate authorities, financing statements, amendments thereto, or assignments thereof and other documents, including mortgages or amendments or assignments thereof in order to evidence

the first priority Liens, pledges, mortgages, and security interests granted in connection with the Exit Facility Documents.  The guaranties, mortgages, pledges, Liens, and other security interests granted in connection with the Exit Facility Documents are granted in good faith as an inducement to the Exit Agents, as applicable, to extend credit thereunder, and shall be deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, and the priorities of such Liens, mortgages, pledges, and security interests shall be as set forth in the Exit Facility Documents.

e.     On the Effective Date, the Exit Facility Documents shall become effective, binding, and enforceable upon the parties thereto in accordance with their respective terms and conditions.

f.     For the avoidance of doubt, the Existing ABL Lenders are not providing the Exit ABL Facility; rather, the Existing ABL Facility will be refinanced on the Effective Date unless otherwise agreed by JPMorgan Chase Bank, N.A. ("**JPMorgan**").

16.     Executory Contracts and Unexpired Leases.

a.     Pursuant to Article VIII of the Plan, as of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which the Debtor is a party shall be deemed assumed and assigned to New Holdco and, in turn, New Holdco Sub without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code, unless, with the consent of the Consenting Lenders, such contract or lease (i) was previously assumed or rejected by the Debtor pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to reject filed by the Debtor on or before the Confirmation Date; (iv) is identified in Sections 8.4 and 8.5 of the

Plan; or (v) is identified for rejection on the Schedule of Rejected Contracts included in the Plan Supplement, if applicable.

        b.     Subject to (i) satisfaction of the conditions set forth in Section 8.1(a) of the Plan, (ii) resolution of any disputes in accordance with Section 8.2 of the Plan with respect to the contracts or leases subject to such disputes, and (iii) the occurrence of the Effective Date, entry of this Order shall constitute approval of the assumptions or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code irrespective, to the maximum extent permitted by law, of any provision in any executory contract or unexpired lease that restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such executory contract or unexpired lease (including any "change of control" provision).  Each executory contract and unexpired lease assumed pursuant to the Plan shall vest in and be fully enforceable by the New Holdco and, in turn, New Holdco Sub in accordance with its terms, except as modified by the provisions of the Plan, any Final Order of this Court authorizing and providing for its assumption, or applicable law.

        c.     For the avoidance of doubt, any deposit account agreements or similar agreements entered in connection with the Debtor Operating Account (as defined in the *Motion of Debtor for Interim and Final Orders (I) Authorizing Debtor to (A) Continue Participating in Existing Cash Management System and Using Bank Account and Business Forms and (B) Continue Intercompany Transactions; (II) Providing Administrative Expense Priority for Postpetition Intercompany Claims; (II) To the Extent Applicable, Extending Time for Debtor to Company With Section 345(b) of the Bankruptcy Code; (IV) Authorizing Debtor to Continue Serving as Obligor on Existing ABL Facility; and (V) Granting Related Relief* [Docket No. 22]) are not executory contracts or, if they are determined to be executory contracts, are assumed but

not assigned to New Holdco, and shall continue to govern the relationship between the Debtor and JPMorgan per their terms.

17.    Conditions Precedent to Effective Date.    The Plan shall not become effective unless and until all conditions set forth in Section 9.2 of the Plan have been satisfied or waived in accordance with Section 9.3 of the Plan.

18.    Injunctions, Releases, and Exculpation.

a.    As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, all injunctions, releases, and exculpation provisions contained in the Plan, including those in Sections 10.5 (Injunction), 10.6(a) (Estate Releases), 10.6(b) (Releases by Holders of Claims), and 10.7 (Exculpation), as well as those set forth in the Settlement and Release Agreement, are hereby approved in their entirety and shall be effective and binding on all Persons, to the extent provided in the Plan, without further order or action by this Court.

b.    Notwithstanding anything to the contrary in Section 10.7 of the Plan, no Exculpated Party shall be exculpated with respect to a Claim or Cause of Action arising out of or related to any act or omission of an Exculpated Party that constitutes gross negligence, willful misconduct, or intentional fraud, as determined by a Final Order, but in all respects such Persons shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

19.    Statutory Fees and Quarterly Reports.    The Reorganized Debtor shall file with this Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.    The Reorganized Debtor, New Holdco, or New Holdco Sub, as applicable, shall, on behalf of the Reorganized Debtor, pay all fees required to be paid to the Clerk of the Court and the U.S. Trustee

pursuant to 28 U.S.C. 1930(a) that become due and payable prior to the Effective Date, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  On and after the Effective Date, New Holdco, New Holdco Sub or the  Reorganized Debtor shall remain obligated to pay any such fees when they become due and payable until the Reorganized Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

20.    <u>Documents, Mortgages, and Instruments</u>.    Each  federal,  state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions, including the Restructuring, contemplated by the Plan, the Plan Documents and this Order.

21.    <u>Reversal/Stay/Modification/Vacatur of Order</u>.    Except  as  otherwise provided in this Order, if any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtor, the Reorganized Debtor, New Holdco, New Holdco Sub, or any other party authorized or required to take action to implement the Plan, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur.  Notwithstanding any such reversal, stay, modification, or vacatur of this Order, any act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Order, the Plan, the Plan Documents, or any amendments or modifications to the foregoing.

22.     <u>Provisions of Plan and Order Nonseverable and Mutually Dependent</u>.  The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

23.     <u>Headings</u>.  Headings utilized herein are for convenience and reference only, and do not constitute a part of this Order for any other purpose.

24.     <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or other federal law is applicable or to the extent that a Plan Document provides otherwise with respect to such document, the rights, duties, and obligations arising under the Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, without giving effect to the principles of conflicts (other than section 5-1401 and 5-1402 of the New York General Obligations Law).

25.     <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Order, the Plan, the Plan Documents, and any other related documents or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

26.     <u>Waiver of Filings</u>.  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtor to file any list, schedule, or statement with the Bankruptcy Court or the Office of the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee), is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

27.     <u>Transaction Expenses</u>.  The Transaction Expenses incurred, or estimated to be incurred, up to and including the Effective Date shall be paid in full in Cash on the Effective Date (to the extent not previously paid prior to or during the course of the Chapter 11 Case in

accordance with the terms of the Restructuring Support Agreement) without the requirement to file a fee application with the Bankruptcy Court and without any requirement for review or approval by the Bankruptcy Court or any other party.  All Transaction Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date.  In addition, the Debtor, New Holdco or New Holdco Sub (as applicable) shall continue to pay Transaction Expenses related to implementation, consummation, and defense of the Plan after the Effective Date when due and payable in the ordinary course, whether incurred before, on, or after the Effective Date.

28.    <u>Current Managers</u>.  On the Effective Date, the terms of the current members of the board of managers of the Debtor shall expire, and commencing on the Effective Date, each of the managers of New Holdco shall be elected and serve pursuant to the terms of the New Organizational Documents pertaining to New Holdco, including the LLC Agreement, and may be replaced or removed in accordance with such New Organizational Documents.

29.    <u>Governmental Approvals Not Required</u>.  This Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

30.    <u>Proofs of Claim</u>.  Notwithstanding anything to the contrary in the Plan, parties may file proofs of Claim and seek determination of such Claims in the Bankruptcy Court, subject to any objection by the Debtor.

31.    <u>Section 7.8 of Plan</u>.  Section 7.8 of the Plan is hereby stricken in its entirety.

32.     <u>Notice of Entry of Confirmation Order and Effective Date</u>.  On or before the fourteenth (14th) day following the date of entry of this Order, the Debtor shall serve notice of entry of this Order (which may be combined with the Notice of Effective Date (as defined below)) pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all known holders of Claims and Interests, the U.S. Trustee, and other parties in interest, by causing notice of entry of this Order (the "**Notice of Confirmation**"), to be delivered to such parties by first-class mail, or e-mail, as applicable.  The Debtor shall also post the Notice of Confirmation on the website maintained by Stretto, at https://cases.stretto.com/GCS (the "**Case Website**").  The notice described herein is adequate under the circumstances, and no other or further notice is necessary.

33.     <u>Notice of Effective Date</u>.  On the Effective Date, the Debtor shall file a notice of the occurrence of the Effective Date ("**Notice of Effective Date**") with the Bankruptcy Court.  As soon as practicable after the occurrence of the Effective Date, the Reorganized Debtor shall serve the Notice of Effective Date on all holders of Claims and Interests, the U.S. Trustee, and all other parties in interest, by causing the Notice of Effective Date to be delivered to such parties by first-class mail or email, as applicable.  The Reorganized Debtor shall also post the Notice of Effective Date on the Case Website.  The notice described herein is adequate under the circumstances, and no other or further notice is necessary.

34.     <u>Substantial Consummation</u>.   On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

35.     <u>Final Order</u>.  This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

36.     _Inconsistency_.  To the extent of any inconsistency between this Order and the Plan, this Order shall govern.  This Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Order.

37.     _Waiver of Stay_.  The requirements under Bankruptcy Rule 3020(e) that a confirmation order is stayed until the expiration of 14 days after entry are hereby waived.  This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062 or otherwise.

38.     _No Waiver_.  The failure to specifically include any particular provision of the Plan in this Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Bankruptcy Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

39.     _Closure of the Chapter 11 Case_.  As soon as practicable after the Effective Date, the Reorganized Debtor is authorized to submit an order to the Bankruptcy Court under certification of counsel that is in form and substance acceptable to the U.S. Trustee that closes and issues a final decree for the Chapter 11 Case.

 Signed:  November 22, 2021

                                    _____
                                       Marvin Isgur
                                       United States Bankruptcy Judge

**<u>Exhibit A</u>**

**Plan**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **ORG GC MIDCO, LLC** | § | **Case No. 21-90015** |
| | § | |
| **Debtor.**[1] | § | |
| | § | |

### AMENDED PREPACKAGED CHAPTER 11 PLAN OF ORG GC MIDCO, LLC

**WEIL, GOTSHAL & MANGES LLP**
Alfredo R. Pérez (15776275)
Gabriel A. Morgan (24125891)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

**WEIL, GOTSHAL & MANGES LLP**
Sunny Singh (admitted *pro hac vice*)
Katherine T. Lewis (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Attorneys for the Debtor*
*and Debtor in Possession*

Dated:   November 18, 2021
        Houston, Texas

---

[1]   The last four digits of the Debtor's federal tax identification number are 1740. The Debtor's mailing address is 6330 Gulfton Street, Houston, Texas 77081.

Table of Contents

Page

**ARTICLE I**   DEFINITIONS AND INTERPRETATION. ........................................................................ 1
    A.    Definitions. .......................................................................................................................... 1
    B.    Interpretation; Application of Definitions and Rules of Construction. ................................... 13
    C.    Reference to Monetary Figures. ............................................................................................ 14
    D.    Controlling Document. .......................................................................................................... 14
    E.    Consultation, Information, Notice and Consent Rights. ........................................................ 14

**ARTICLE II**   ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS. ..................................... 15
    2.1.    Administrative Expense Claims. ...................................................................................... 15
    2.2.    Fee Claims. ...................................................................................................................... 15
    2.3.    Priority Tax Claims. ......................................................................................................... 16
    2.4.    Term DIP Claims. ............................................................................................................ 16
    2.5.    Transaction Expenses. ..................................................................................................... 17

**ARTICLE III**   CLASSIFICATION OF CLAIMS AND INTERESTS. ........................................... 17
    3.1.    Classification in General. ................................................................................................ 17
    3.2.    Summary of Classification. ............................................................................................. 17
    3.3.    Special Provision Governing Unimpaired Claims. .......................................................... 18
    3.4.    Elimination of Vacant Classes. ....................................................................................... 18

**ARTICLE IV**   TREATMENT OF CLAIMS AND INTERESTS. ................................................. 18
    4.1.    Priority Non-Tax Claims (Class 1). ................................................................................. 18

i

Table of Contents
(continued)

| | | |
|---|---|---|
| 4.2. | Other Secured Claims (Class 2) | 19 |
| 4.3. | Existing Term Loan Claims (Class 3) | 19 |
| 4.4. | Existing ABL Facility Claims (Class 4) | 20 |
| 4.5. | General Unsecured Claims (Class 5) | 20 |
| 4.6. | Intercompany Claims (Class 6) | 20 |
| 4.7. | Midco Equity Interests (Class 7) | 21 |
| 4.8. | Subordinated Claims and Interests | 21 |
| **ARTICLE V** | MEANS FOR IMPLEMENTATION | 21 |
| 5.1. | Compromise and Settlement of Claims, Interests, and Controversies | 21 |
| 5.2. | Continued Corporate Existence | 22 |
| 5.3. | Exit ABL Facility | 22 |
| 5.4. | Exit Term Loan Facilities | 23 |
| 5.5. | New Intercreditor Agreements | 24 |
| 5.6. | New Organizational Documents | 24 |
| 5.7. | Authorization and Issuance of the New Equity | 25 |
| 5.8. | Section 1145 Exemption | 25 |
| 5.9. | Cancellation of Existing Securities and Agreements | 25 |
| 5.10. | Officers and Board of Managers | 26 |
| 5.11. | Effectuating Documents; Further Transactions | 27 |
| 5.12. | Cancellation of Liens | 28 |

Table of Contents
(continued)

| | | |
|---|---|---|
| 5.13. | Management Incentive Plan. | 29 |
| 5.14. | Nonconsensual Confirmation. | 29 |
| 5.15. | Closing of Chapter 11 Case. | 29 |
| 5.16. | Notice of Effective Date. | 29 |
| 5.17. | Sources for Plan Distributions. | 29 |
| **ARTICLE VI** | **DISTRIBUTIONS.** | 29 |
| 6.1. | Distributions Generally. | 29 |
| 6.2. | Distribution Record Date. | 30 |
| 6.3. | Date of Distributions. | 30 |
| 6.4. | Disbursing Agent. | 30 |
| 6.5. | Rights and Powers of Disbursing Agent. | 30 |
| 6.6. | Expenses of Disbursing Agent. | 31 |
| 6.7. | No Postpetition Interest on Claims. | 31 |
| 6.8. | Delivery of Distributions. | 31 |
| 6.9. | Distributions after Effective Date. | 32 |
| 6.10. | Unclaimed Property. | 32 |
| 6.11. | Time Bar to Cash Payments. | 32 |
| 6.12. | Manner of Payment under Plan. | 32 |
| 6.13. | Satisfaction of Claims. | 32 |
| 6.14. | Fractional Stock. | 33 |

Table of Contents
(continued)

| | | | |
|---|---|---|---|
| 6.15. | Minimum Cash Distributions. | | 33 |
| 6.16. | Setoffs and Recoupments. | | 33 |
| 6.17. | Allocation of Distributions between Principal and Interest. | | 33 |
| 6.18. | No Distribution in Excess of Amount of Allowed Claim. | | 33 |
| 6.19. | Surrender of Cancelled Instruments or Securities. | | 34 |
| 6.20. | Accrual of Dividends and Other Rights. | | 34 |
| 6.21. | Withholding and Reporting Requirements. | | 34 |
| 6.22. | Hart-Scott-Rodino Antitrust Improvements Act. | | 35 |
| **ARTICLE VII** | PROCEDURES FOR DISPUTED CLAIMS. | | 35 |
| 7.1. | Disputed Claims. | | 35 |
| 7.2. | Claims Administration Responsibilities. | | 35 |
| 7.3. | Estimation of Claims. | | 36 |
| 7.4. | No Distributions Pending Allowance. | | 36 |
| 7.5. | Distributions after Allowance. | | 36 |
| 7.6. | Claim Resolution Procedures Cumulative. | | 36 |
| 7.7. | Claims Paid by Third Parties. | | 37 |
| 7.8. | Insured Claims. | | 37 |
| **ARTICLE VIII** | EXECUTORY CONTRACTS AND UNEXPIRED LEASES. | | 37 |
| 8.1. | General Treatment. | | 37 |
| 8.2. | Determination of Cure Disputes and Deemed Consent | | 38 |

iv

Table of Contents
(continued)

| | | |
|---|---|---|
| 8.3. | Rejection Claims. | 39 |
| 8.4. | Survival of the Debtor's Indemnification Obligations. | 40 |
| 8.5. | Insurance Policies. | 40 |
| 8.6. | Intellectual Property Licenses and Agreements. | 41 |
| 8.7. | Modifications, Amendments, Supplements, Restatements, or Other Agreements. | 41 |
| 8.8. | Reservation of Rights. | 41 |
| 8.9. | Contracts and Leases Entered into after the Effective Date. | 42 |
| **ARTICLE IX** | CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND EFFECTIVE DATE. | 42 |
| 9.1. | Conditions Precedent to Confirmation of Plan. | 42 |
| 9.2. | Conditions Precedent to Effective Date. | 42 |
| 9.3. | Waiver of Conditions Precedent. | 44 |
| 9.4. | Effect of Failure of a Condition. | 44 |
| **ARTICLE X** | EFFECT OF CONFIRMATION OF PLAN. | 44 |
| 10.1. | Vesting of Assets. | 44 |
| 10.2. | Binding Effect. | 44 |
| 10.3. | Discharge of Claims and Termination of Interests. | 45 |
| 10.4. | Term of Injunctions or Stays. | 45 |
| 10.5. | Injunction. | 45 |
| 10.6. | Releases. | 46 |

Table of Contents
(continued)

| | | |
|---|---|---|
| 10.7. | Exculpation. | 48 |
| 10.8. | Retention of Causes of Action/Reservation of Rights. | 49 |
| 10.9. | Solicitation of Plan. | 50 |
| 10.10. | Corporate and Limited Liability Company Action. | 50 |
| 10.11. | Protections Against Discriminatory Treatment. | 51 |
| 10.12. | Reimbursement or Contribution. | 51 |
| **ARTICLE XI** | RETENTION OF JURISDICTION. | 51 |
| 11.1. | Retention of Jurisdiction. | 51 |
| 11.2. | Courts of Competent Jurisdiction. | 53 |
| **ARTICLE XII** | MISCELLANEOUS PROVISIONS. | 53 |
| 12.1. | Payment of Sponsor Fees. | 53 |
| 12.2. | Payment of Statutory Fees. | 54 |
| 12.3. | Substantial Consummation of the Plan. | 54 |
| 12.4. | Plan Supplement. | 54 |
| 12.5. | Request for Expedited Determination of Taxes. | 54 |
| 12.6. | Exemption from Certain Transfer Taxes. | 54 |
| 12.7. | Amendments. | 55 |
| 12.8. | Effectuating Documents and Further Transactions. | 55 |
| 12.9. | Revocation or Withdrawal of Plan. | 55 |
| 12.10. | Severability of Plan Provisions. | 56 |

<u>Table of Contents</u>
(continued)

<u>Page</u>

| | | |
|---|---|---|
| 12.11. | Governing Law. | 56 |
| 12.12. | Time. | 56 |
| 12.13. | Dates of Actions to Implement the Plan. | 56 |
| 12.14. | Immediate Binding Effect. | 57 |
| 12.15. | Deemed Acts. | 57 |
| 12.16. | Reservation of Rights. | 57 |
| 12.17. | Successor and Assigns. | 57 |
| 12.18. | Entire Agreement. | 57 |
| 12.19. | Exhibits to Plan. | 57 |
| 12.20. | Waiver or Estoppel. | 58 |
| 12.21. | Notices. | 58 |

ORG GC Midco, LLC (the "**Debtor**" and, collectively, with its direct and indirect subsidiaries, the "**Company**" or the "**GCS Parties**") proposes the following chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in Article I.A.

**ARTICLE I       DEFINITIONS AND INTERPRETATION.**

A.    **Definitions.**

The following terms shall have the respective meanings specified below:

1.1    *Administrative Expense Claim* means any right to payment constituting a cost or expense of administration incurred during the Chapter 11 Case of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation, (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; (ii) the Fee Claims; and (iii) the Term DIP Claims.

1.2    *Affiliates* means, with respect to any Person (except with respect to ORG GC Holdings, LLC), any other Person that (either directly or indirectly) controls, is controlled by, or is under common control with the specified Person and shall also include (i) any related fund of such Person and (ii) in the case of a specified Person who is an individual, any family member or personal representative of such Person. The term "control" (including, with its correlative meanings, "controlling," "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of management or policies of a Person (whether through ownership of securities, by contract or otherwise).

1.3    *Allowed* means, with reference to any Claim or Interest, a Claim or Interest (a) arising on or before the Effective Date as to which (i) no objection to allowance or priority, and no request for estimation or other challenge, including, without limitation, pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law, or (ii) any objection has been determined in favor of the holder of the Claim or Interest by a Final Order; (b) that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtor or New Holdco and/or New Holdco Sub, as applicable; (c) as to which the liability of the Debtor, New Holdco, or New Holdco Sub, as applicable, and the amount thereof are determined by a Final Order of a court of competent jurisdiction; or (d) expressly allowed hereunder; *provided*, *however*, that notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable, and (y) New Holdco and/or New Holdco Sub (as successor to the Debtor) shall retain all claims and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan.

1.4    *Bankruptcy Code* means title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Case.

1.5    ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of Texas having jurisdiction over the Chapter 11 Case.

1.6    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Case.

1.7    ***BSP*** means Benefit Street Partners LLC, together with its Affiliates and related and/or managed funds, accounts, and/or entities directly or indirectly owned by such Affiliates, managed funds, or accounts, in their respective capacities as Existing Term Lenders and the Existing Term Loan Facility Agent.

1.8    ***Business Day*** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.9    ***Cash*** means legal tender of the United States of America.

1.10    ***Causes of Action*** means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, loss, debt, damage, judgment, account, defense, remedies, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws).  Causes of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.11    ***Certificate*** means any instrument evidencing a Claim or an Interest.

1.12    ***Chapter 11 Case*** means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date in the Bankruptcy Court.

1.13    ***Claim*** has the meaning set forth in section 101(5) of the Bankruptcy Code, as against the Debtor.

1.14    ***Class*** means any group of Claims or Interests classified as set forth in Article III of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.15    ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

2

1.16    **_Confirmation Hearing_** means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.17    **_Confirmation Order_** means the order of the Bankruptcy Court approving the Disclosure Statement and confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which order shall be in form and substance reasonably satisfactory to the Company and the Consenting Lenders.

1.18    **_Consenting Lenders_** has the meaning ascribed to such term in the Restructuring Support Agreement.

1.19    **_Cure_** means the payment of Cash by the Debtor, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to (a) cure a monetary default by the Debtor in accordance with the terms of an executory contract or unexpired lease of the Debtor and (b) permit the Debtor to assume and assign such executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

1.20    **_Cure Dispute_** means a pending objection relating to assumption of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

1.21    **_Debtor_** has the meaning set forth in the introductory paragraph of the Plan.

1.22    **_Debtor in Possession_** means the Debtor in its capacity as a debtor in possession in the Chapter 11 Case pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

1.23    **_Definitive Documents_** has the meaning set forth in the Restructuring Support Agreement.

1.24    **_DIP Budget_** means "Budget" as defined in the Term DIP Facility Agreement.

1.25    **_DIP Order_** means the order of the Bankruptcy Court approving the terms of the Term DIP Facility and the use of cash collateral, to the extent applicable, which shall be in form and substance reasonably acceptable to the Consenting Lenders.

1.26    **_Disallowed_** means, with respect to any Claim or Interest, that such Claim or Interest has been determined by a Final Order or specified in a provision of the Plan not to be Allowed.

1.27    **_Disbursing Agent_** means any Entity (including the Debtor, New Holdco, or New Holdco Sub, if either acts in such capacity) in its capacity as a disbursing agent under Article VI of the Plan.

1.28    **_Disclosure Statement_** means the disclosure statement for the Plan that is prepared and distributed in accordance with, among other things, sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Rule 3018 of the Bankruptcy Rules and other applicable law, and all exhibits, schedules, supplements, modifications and amendments thereto, all of which shall be consistent in all material respects with the Restructuring Support Agreement and otherwise in form and substance reasonably acceptable to the Debtors and the Consenting Lenders (as the same may be amended, modified or supplemented from time to time in accordance with the terms hereof).

3

1.29    **Disputed** means a Claim or Interest, that (a) is neither Allowed nor Disallowed under the Plan or a Final Order, nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code or (b) with respect to which the Debtor or any party in interest has interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order.  If the Debtor disputes only a portion of a Claim, such Claim shall be deemed Allowed in any amount the Debtor does not dispute, and Disputed as to the balance of such Claim.

1.30    **Effective Date** means the date on which all conditions to the effectiveness of the Plan set forth in Article IX hereof have been satisfied or waived in accordance with the terms of the Plan.

1.31    **Entity** means an individual, corporation, partnership, limited  partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, government unit (as defined in section 101(27) of the Bankruptcy Code) or any political subdivision thereof, or other person (as defined in section 101(41) of the Bankruptcy Code) or other entity.

1.32    **Estate** means the Debtor's estate created under section 541 of the Bankruptcy Code.

1.33    **Exchange Act** means the Securities Exchange Act of 1934, as amended.

1.34    **Exculpated Parties** means, collectively: (a) the Debtor, (b) the Reorganized Debtor, (c) the Non-Debtor GCS Parties, (d) the Consenting Lenders, (e) the Existing ABL Lenders, (f) the Existing Agents, (g) the Term DIP Agent, (h) the Term DIP Lenders, (i) the Exit Agents and (j) with respect to each of the foregoing Entities in clauses (a) through (i), all Persons and Entities who acted on their behalf in connection with the matters as to which exculpation is provided herein.

1.35    **Existing ABL Claims** means all Claims arising under, in connection with, or related to the Existing ABL Facility Agreement, including any accrued and unpaid interest and fees.

1.36    **Existing ABL Facility** means that asset-based lending facility provided pursuant to the Existing ABL Facility Agreement.

1.37    **Existing ABL Facility Agreement** means that certain Credit Agreement, dated July 31, 2017, by and among GCS LP, as borrower, each of the guarantors party thereto, including the Debtor, the Existing ABL Lenders, and the Existing ABL Facility Agent (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof).

1.38    **Existing ABL Facility Agent** means JPMorgan Chase Bank N.A. in its capacity as administrative agent under the Existing ABL Facility Agreement.

1.39    **Existing ABL Lenders** means the Persons party to the Existing ABL Facility Agreement as "Lenders" from time to time thereunder, and each of their respective successors and permitted assigns.

1.40    **Existing Agents** means, collectively, the Existing Term Loan Facility Agent and the Existing ABL Facility Agent.

1.41    ***Existing Indemnity Agreements*** means, collectively, the indemnification agreements entered into by the Non-Debtor GCS Parties, and guaranteed by the Debtor, with certain of the Sureties with respect to the Existing Surety Bonds.

1.42    ***Existing Intercreditor Agreement*** means that certain Intercreditor Agreement, dated as of July 31, 2017, by and among the Existing ABL Facility Agent, the Existing Term Loan Facility Agent, and acknowledged by the GCS Parties (as amended, restated, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof).

1.43    ***Existing Surety Bonds*** means the commercial surety bonds issued by the Sureties on behalf of certain of the Non-Debtor GCS Parties, and guaranteed by the Debtor, in connection with certain statutory, contractual, or other regulatory bonding requirements applicable to such Non-Debtor GCS Parties in jurisdictions where the GCS Parties operate.

1.44    ***Existing Term Lenders*** means the Persons party to the Existing Term Loan Credit Agreement as "Lenders" from time to time thereunder, and each of their respective successors and permitted assigns.

1.45    ***Existing Term Loan Claims*** means all Claims arising under, in connection with, or related to the Existing Term Loan Credit Agreement, including any accrued and unpaid interest, fees, and/or deficiency Claims.

1.46    ***Existing Term Loan Credit Agreement*** means that certain Financing Agreement, dated July 31, 2017, by and among Midco and certain of its affiliates, as borrowers, each of the guarantors party thereto, the Existing Term Loan Facility Agent, and the Existing Term Lenders (as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof).

1.47    ***Existing Term Loan Facility*** means that certain term loan facility provided pursuant to the Existing Term Loan Credit Agreement.

1.48    ***Existing Term Loan Facility Agent*** means BSP Agency, LLC in its capacity as administrative agent and collateral agent under that certain Existing Term Loan Credit Agreement.

1.49    ***Exit ABL Facility*** means that asset-based lending facility provided pursuant to the Exit ABL Facility Agreement.

1.50    ***Exit ABL Facility Agent*** means the administrative agent and collateral agent under the Exit ABL Facility Agreement.

1.51    ***Exit ABL Facility Agreement*** means (i) the Existing ABL Facility Agreement, as amended on terms and conditions reasonably acceptable to the GCS Parties and the Consenting Lenders or (ii) a credit agreement evidencing an asset-based lending facility on terms and conditions reasonably acceptable to the GCS Parties and the Consenting Lenders.

1.52 **_Exit ABL Facility Documents_** means, collectively, the Exit ABL Facility Agreement and all other "Loan Documents" (as defined therein) required to be delivered to the Exit ABL Facility Agent.

1.53 **_Exit ABL Facility Lenders_** means any Person that becomes a lender under the Exit ABL Facility Agreement.

1.54 **_Exit ABL Facility Obligations_** means all debts, liabilities, guarantees and other obligations of the Reorganized Company arising under, in connection with, or related to the Exit ABL Facility.

1.55 **_Exit Agents_** means, collectively, the Exit ABL Facility Agent, the New 1L Facility Agent, and the New 2L Facility Agent,

1.56 **_Exit Term Loan Facilities_** means, collectively, the New 1L Facility and the New 2L Facility.

1.57 **_Exit Term Loan Facility Agreements_** means, collectively, the New 1L Facility Agreement and the New 2L Facility Agreement.

1.58 **_Exit Term Loan Facility Documents_** means, collectively, the New 1L Facility Documents and the New 2L Facility Documents.

1.59 **_Fee Claim_** means a Claim for professional services rendered or costs incurred on or after the Petition Date through the Effective Date by professional persons retained by the Debtor or official committee (if any) by an order of the Bankruptcy Court pursuant to sections 327, 328, 329, 330, 331, or 503(b) of the Bankruptcy Code in the Chapter 11 Case.

1.60 **_Final Order_** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for _certiorari_, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for _certiorari_, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of _certiorari_, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or _certiorari_ shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for _certiorari_ or move for a new trial, reargument, or rehearing shall have expired; _provided_, _however_, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

1.61 **_General Unsecured Claim_** means any unsecured Claim against the Debtor as of the Petition Date that is not an Existing Term Loan Claim, an Existing ABL Claim, an Other Secured Claim, an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Fee Claim, a Term DIP Claim, or an Intercompany Claim that is not entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court.

6

1.62    **GCS Parties** means, collectively, the Debtor and each of (i) GP Buyer, (ii) LP Buyer, (iii) GCS LP, (iv) GC Services International, LLC, and (v) GC Services (Barbados) SRL.

1.63    **GCS LP** means GC Services Limited Partnership.

1.64    **GP Buyer** means ORG GC GP Buyer, LLC.

1.65    **GS** means Goldman Sachs Bank USA, together with its Affiliates and related and/or managed funds, accounts and/or entities directly or indirectly owned by such Affiliates, managed funds or accounts, in its capacity as an Existing Term Lender.

1.66    **Impaired** means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.67    **Initial New 1L Loans** means the term loans to be issued under the Initial New 1L Facility.

1.68    **Initial New 1L Facility** means the new term loan facility under the New 1L Facility Agreement pursuant to which, as of the Effective Date, the Initial New 1L Loans will be borrowed in an aggregate principal amount equal to $71 million (inclusive of the Term DIP Claims exchanged for Initial New 1L Loans on a dollar-for-dollar basis on the Effective Date).

1.69    **Insured Claims** means any Claim or portion of a Claim that is, or may be, insured under any of the Debtor's insurance policies.

1.70    **Intercompany Claim** means any Claim against the Debtor held by a non-Debtor affiliate.

1.71    **Interest** means any equity security (as defined in section 101(16) of the Bankruptcy Code) in the Debtor, and including all common stock, preferred stock, limited partnership interests, general partnership interests, limited liability company interests and any other equity, ownership, beneficial or profits interests in the Debtor, whether or not transferable and whether fully vested or vesting in the future, and any option, warrant, right, or any other security, agreement or interest that is exercisable, convertible or exchangeable into or for any common stock, preferred stock, limited partnership interests, general partnership interests, limited liability company interests, or any other equity, ownership, beneficial or profits interests in or of the Debtor, contractual or otherwise, including, without limitation, equity or equity-based incentives, grants, or other instruments issued, granted or promised to be granted to current or former employees, directors, officers, or contractors of the Debtor, to acquire any such interests in the Debtor that existed immediately before the Effective Date.

1.72    **Lien** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.73    **LLC Agreement** means the amended and restated limited liability company agreement for New Holdco to be entered into on the Effective Date.

1.74    **LP Buyer** means ORG GC LP Buyer, LLC.

1.75 **Management Incentive Plan** means a post-Effective Date management incentive plan, which may be formulated and approved by the New Board in its sole discretion; *provided* that the terms must be acceptable to BSP and GS.

1.76 **Midco** means ORG GC Midco, LLC, the Debtor in the Chapter 11 Case.

1.77 **Midco Equity Interests** means any outstanding Interests in the Debtor that existed immediately prior to the Effective Date.

1.78 **New 1L Facility** means that certain first-lien senior secured term loan facility to be provided to New Holdco Sub, GP Buyer, and LP Buyer on the Effective Date pursuant to the New 1L Facility Agreement.

1.79 **New 1L Facility Agent** means BSP Agency, LLC, in its capacity as administrative agent and collateral agent under the New 1L Facility Agreement.

1.80 **New 1L Facility Agreement** means that certain First Lien Financing Agreement, dated as of the Effective Date, governing the New 1L Facility (as may be amended, restated, amended and restated, supplemented, or modified from time to time, solely in accordance with the terms thereof) in form and substance reasonably acceptable to BSP, GS, New Holdco Sub, and each of the Non-Debtor GCS Parties party thereto.

1.81 **New 1L Facility Documents** means, collectively, the New 1L Facility Agreement and all other "Loan Documents" (as defined therein) required to be delivered to the New 1L Facility Agent.

1.82 **New 1L Facility Lender** means any Person that becomes a lender under the New 1L Facility from time to time in accordance with the New 1L Facility Agreement.

1.83 **New 1L Facility Obligations** means all debts, liabilities, guarantees and other obligations of the Reorganized Company arising under, in connection with, or related to the New 1L Facility.

1.84 **New 2L Facility** means that certain second lien secured term loan facility to be provided to New Holdco Sub, GP Buyer and LP Buyer on the Effective Date pursuant to the New 2L Facility Agreement.

1.85 **New 2L Facility Agent** means BSP Agency, LLC in its capacity as administrative agent and collateral agent under the New 2L Facility Agreement.

1.86 **New 2L Facility Agreement** means that certain Second Lien Financing Agreement, dated as of the Effective Date, governing the New 2L Facility (as may be amended, restated, amended and restated, supplemented, or modified from time to time, solely in accordance with the terms thereof) in form and substance reasonably acceptable to BSP, GS, New Holdco Sub and each of the Non-Debtor GCS Parties party thereto.

1.87     ***New 2L Facility Documents*** means, collectively, the New 2L Facility Agreement and all other "Loan Documents" (as defined therein) required to be delivered to the New 2L Facility Agent.

1.88     ***New 2L Facility Lender*** means any Person that becomes a lender under the New 2L Facility from time to time in accordance with the New 2L Facility Agreement.

1.89     ***New 2L Facility Obligations*** means all debts, liabilities, guarantees and other obligations of the Reorganized Company arising under, in connection with, or related to the New 2L Facility.

1.90     ***New 2L Loans*** means the term loans to be issued under the New 2L Facility.

1.91     ***New Board*** means the board of managers of New Holdco as of the Effective Date.

1.92     ***New Equity*** means, collectively, the New Holdco Common Equity, the New Holdco Preferred Equity, and the New Midco Equity.

1.93     ***New Holdco*** means a new entity formed on the Effective Date, which will hold 100% of the equity interests in New Holdco Sub, and which shall be the successor to the Debtor.

1.94     ***New Holdco Common Equity*** means the common equity interests of New Holdco that will be issued by New Holdco on the Effective Date in connection with implementation of the Plan.

1.95     ***New Holdco Equity*** means, collectively, the New Holdco Common Equity and the New Holdco Preferred Equity.

1.96     ***New Holdco Junior Preferred Equity*** means the junior preferred equity interests of New Holdco that will be issued by New Holdco on the Effective Date in connection with implementation of the Plan.

1.97     ***New Holdco Preferred Equity*** means, collectively, the New Holdco Senior Preferred Equity and the New Holdco Junior Preferred Equity.

1.98     ***New Holdco Senior Preferred Equity*** means the senior preferred equity interests of New Holdco that will be issued by New Holdco on the Effective Date in connection with implementation of the Plan.

1.99     ***New Holdco Sub*** means a new entity to be wholly owned by New Holdco that is formed on the Effective Date, which will own 100% of the equity interests in each of GP Buyer and LP Buyer.

1.100     ***New 1L/2L Intercreditor Agreement*** means the Intercreditor Agreement, to be entered into on the Effective Date, by and between the New 1L Facility Agent and the New 2L Facility Agent, the form and substance of which shall be reasonably acceptable to the New 1L Facility Lenders, the New 2L Facility Lenders, and New Holdco Sub.

9

1.101    ***New 1L/2L/ABL Intercreditor Agreement*** means the Intercreditor Agreement, to be entered into on the Effective Date, by and between the Exit ABL Facility Agent, the New 1L Facility Agent, and the New 2L Facility Agent, the form and substance of which shall be reasonably acceptable to the Exit ABL Facility Lenders, the New 1L Facility Lenders, the New 2L Facility Lenders, and New Holdco Sub.

1.102    ***New Intercreditor Agreements*** means, collectively, the New 1L/2L Intercreditor Agreement and the New 1L/2L/ABL Intercreditor Agreement.

1.103    ***New Midco Equity*** means the common equity interests of the Reorganized Debtor that will be issued by the Reorganized Debtor to GS on the Effective Date in connection with implementation of the Plan.

1.104    ***New Organizational Documents*** means the new organizational documents of each of the Non-Debtor GCS Parties, New Holdco and New Holdco Sub after giving effect to the Restructuring and the documents necessary to be executed and/or filed for the formation of New Holdco and New Holdco Sub, including the LLC Agreement, each of which shall be in form and substance reasonably acceptable to BSP, GS, and the Company.

1.105    ***Non-Debtor GCS Parties*** means the GCS Parties excluding the Debtor.

1.106    ***Non-Released Parties*** means (i) any indirect or direct holder of Interests in the Debtor that is not (x) a current employee of the GCS Parties or (y) a party to the Settlement and Release Agreement; and (ii) the former Chief Executive Officer of the GCS Parties whose employment with the GCS Parties was terminated by GCS LP effective as of November 29, 2020.

1.107    ***Other Secured Claim*** means a Secured Claim, other than a Priority Tax Claim, an Existing Term Loan Claim, an Existing ABL Claim, a Term DIP Claim, or an Administrative Expense Claim.

1.108    ***Person*** means any individual, corporation, partnership, limited partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, unincorporated organization, Governmental Unit or any political subdivision thereof, or any other Entity.

1.109    ***Petition Date*** means the date on which the Debtor commenced the Chapter 11 Case.

1.110    ***Plan*** means this prepackaged chapter 11 plan, including all appendices, exhibits, schedules, and supplements hereto (including, without limitation, any appendices, schedules, and supplements to the Plan contained in the Plan Supplement), as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code, the terms hereof, and the terms of the Restructuring Support Agreement.

1.111    ***Plan Supplement*** means a supplemental appendix to the Plan containing, among other things, draft forms of documents, schedules, and exhibits to the Plan to be filed with the Court, including, but not limited to, the following, each of which must be in form and substance reasonably acceptable to the GCS Parties and the Consenting Lenders: (a) the New Organizational Documents, including the LLC

Agreement; (b) the Exit Term Loan Facility Agreements; (c) the Exit ABL Facility Agreement or a term sheet detailing the material terms thereof, (d) the identity of the managers to be appointed to the New Board; (e) the Schedule of Rejected Contracts, if applicable; (f) the Restructuring Transaction Steps; and, (g) to the extent known, information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; *provided* that through the Effective Date, the Debtor shall have the right to amend the Plan Supplement and any schedules, exhibits, or amendments thereto, in accordance with the terms of the Plan and the Restructuring Support Agreement.

1.112    ***Priority Non-Tax Claim*** means any Claim other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

1.113    ***Priority Tax Claim*** means any Secured Claim or unsecured Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.114    ***Pro Rata*** means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class, or the proportion that Allowed Claims or Interests in a particular Class bear to the aggregate amount of Allowed Claims and Disputed Claims or Allowed Interests and Disputed Interests in a particular Class and other Classes entitled to share in the same recovery as such Class under the Plan.

1.115    ***Reinstate, Reinstated, or Reinstatement*** means leaving a Claim Unimpaired under the Plan.

1.116    ***Released Parties*** means (a) the Debtor; (b) the Consenting Lenders; (c) the Existing Term Loan Agent; (d) the Term DIP Lenders; (e) the Term DIP Agent; (f) with respect to the foregoing (a) through (e), each of their respective current affiliates, subsidiaries, members, managers, equity owners, managed entities, investment managers, employees, professionals, consultants, directors, and officers (in each case, in their respective capacities as such); and (g) with respect to the foregoing (b) through (e), each of their respective former affiliates, subsidiaries, members, managers, equity owners, managed entities, investment managers, employees, professionals, consultants, directors, and officers (in each case, in their respective capacities as such); *provided, however,* that "Released Parties" shall not include a Non-Released Party.

1.117    ***Releases*** means the releases set forth in Section 10.6 hereof.

1.118    ***Releasing Parties*** means (a) the Debtor; (b) the Consenting Lenders; (c) the Existing Term Loan Agent; (d) the Term DIP Lenders; (e) the Term DIP Agent; (f) with respect to the foregoing (a) through (e), each of their respective current affiliates, subsidiaries, members, managers, equity owners, managed entities, investment managers, employees, professionals, consultants, directors, and officers (in each case, in their respective capacities as such); and (g) the holders of Claims that are Unimpaired and presumed to accept the Plan; *provided that* in each case, an Entity shall not be a Releasing Party if it (x) elects to timely opt out of the third party releases contained in Section 10.6 of the Plan or (y) is a Non-Released Party.

1.119    **Reorganized Company** means the Company, as reorganized on the Effective Date in accordance with the Plan.

1.120    **Reorganized Debtor** means the Debtor as reorganized on the Effective Date in accordance with the Plan.

1.121    **Restructuring** means, collectively, the transactions necessary or, in the judgment of the Consenting Lenders, reasonably desirable to effectuate the financial restructuring of the Debtor, the principal terms of which are set forth in the Plan, the Restructuring Support Agreement, and the Plan Supplement.

1.122    **Restructuring Support Agreement** means that certain Restructuring Support Agreement, dated as of October 16, 2021, by and among the GCS Parties and the Consenting Lenders (as may be amended, restated, amended and restated, supplemented, or modified from time to time in accordance with the terms thereof) annexed to the Plan as **Exhibit A**.

1.123    **Restructuring Transaction Steps** means the summary of transaction steps to complete the Restructuring contemplated by the Plan, which shall be in the Plan Supplement.

1.124    **Schedule of Rejected Contracts** means, to the extent applicable, the schedule of executory contracts and unexpired leases to be rejected by the Debtor pursuant to this Plan, if any, in the form filed with the Bankruptcy Court as part of the Plan Supplement, as the same may be amended, modified, or supplemented from time to time in accordance with the terms hereof and the Restructuring Support Agreement.

1.125    **Secured Claim** means a Claim (a) secured by a Lien on collateral to the extent of the value of such collateral as (i) set forth in the Plan, (ii) agreed to by the holder of such Claim and the Debtor (with the consent of the Consenting Lenders), or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (b) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

1.126    **Security** has the meaning set forth in in section 101(49) of the Bankruptcy Code.

1.127    **Settlement and Release Agreement** means an agreement by and between the (i) Debtor; (ii) the Non-Debtor GCS Parties; (iii) ORG GC Holdings, LLC; (iv) Owner Resource Group, LLC and certain of its affiliates; (v) the Existing Term Loan Facility Agent; and (vi) the Consenting Lenders setting forth a settlement among the parties thereto in form and substance reasonably acceptable to each of the parties thereto.

1.128    **Sureties** means, collectively, those certain commercial surety companies that have issued commercial surety bonds on behalf of certain of the Non-Debtor GCS Parties in connection with certain statutory, contractual, or other regulatory bonding requirements applicable to such GCS Parties in jurisdictions where such GCS Parties operate.

1.129    **Tax Code** means the Internal Revenue Code of 1986, as amended from time to time.

12

1.130 **Term DIP Agent** means Goldman Sachs Specialty Lending Group, L.P., solely in its capacity as administrative agent and collateral agent under the Term DIP Facility, or its successors, permitted assigns, or any replacement agent appointed pursuant to the terms of the Term DIP Facility Agreement.

1.131 **Term DIP Claims** means all Claims arising under, in connection with, or related to the Term DIP Facility.

1.132 **Term DIP Facility** means that debtor-in-possession financing facility to be provided to the Debtor pursuant to the Term DIP Facility Agreement and the DIP Orders.

1.133 **Term DIP Facility Agreement** means that certain Superpriority Secured Debtor-in-Possession Financing Agreement, to be dated after the Petition Date, by and among the Debtor, as borrower, certain Non-Debtor GCS Parties, as guarantors, the Term DIP Lenders, and the Term DIP Agent (as the same may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof), on terms and conditions satisfactory to the Debtor, the Non-Debtor GCS Parties thereto, the Term DIP Lenders, and the Consenting Lenders.

1.134 **Term DIP Lenders** means the Persons party to the Term DIP Facility Agreement as "Lender" from time to time thereunder.

1.135 **Transaction Expenses** has the meaning set forth in the Restructuring Support Agreement.

1.136 **Unimpaired** means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.137 **U.S. Trustee** means the United States Trustee for Region 7.

1.138 **Voting Deadline** means the date by which all Persons or Entities entitled to vote on the Plan must vote to accept or reject the Plan, which is November 1, 2021 at 4:00 p.m. (Prevailing Central Time), or such other date set by the Bankruptcy Court.

B. **Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time in accordance with the terms hereof and the Restructuring Support Agreement. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. The headings in the Plan are for convenience of reference only and are not intended to be a part of the Plan and shall not limit or otherwise affect the provisions hereof. For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be

13

substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (5) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (6) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (7) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated; (8) references to "shareholders," "directors" and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (9) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective Person or Entity that have such consent, acceptance, or approval rights, including by electronic mail; (10) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; and (11) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented.

      C.       **Reference to Monetary Figures.**

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

      D.       **Controlling Document.**

In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document). The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided* that if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

      E.       **Consultation, Information, Notice and Consent Rights.**

Notwithstanding anything herein to the contrary, any and all consultation, information, notice, and consent rights of the parties to the Restructuring Support Agreement set forth in the Restructuring Support Agreement (including the Consenting Lenders' consent rights), with respect to the form and substance of the Plan, all exhibits to the Plan, the Plan Supplement, and all other Definitive Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A of the Plan) and fully enforceable as if stated in full herein.

Failure to reference the rights referred to in the immediately preceding paragraph as such rights relate to any document referenced in the Restructuring Support Agreement shall not impair such rights and obligations.

## ARTICLE II        ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.

2.1.    ***Administrative Expense Claims.***

(a)    Except as otherwise provided in this <u>Section 2.1</u> of the Plan, requests for payment of Administrative Expense Claims (other than a Fee Claim, Transaction Expenses, or a Term DIP Claim) must be filed and served on the Debtor, New Holdco, or New Holdco Sub, as applicable, no later than the first Business Day that is thirty (30) calendar days after the Effective Date.  Holders of Administrative Expense Claims that are required to, but do not, timely file and serve a request for payment of such Administrative Expense Claims shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtor, the Reorganized Debtor, New Holdco, New Holdco Sub, or their respective property and such Administrative Expense Claims shall be deemed discharged as of the Effective Date.  Notwithstanding the foregoing, no request for payment of an Administrative Expense Claim need be filed with respect to an Administrative Expense Claim previously Allowed.

(b)    Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, or has been paid prior to the Effective Date, each holder of an Allowed Administrative Expense Claim (other than a Fee Claim or a Term DIP Claim) shall receive, in full and final satisfaction, settlement, release, and discharge of such Claim, Cash in an amount equal to such Allowed Administrative Expense Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor, as a debtor in possession, shall be paid in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any course of dealing or agreements governing, instruments evidencing, or other documents relating to such transactions and otherwise in accordance with the DIP Budget.

2.2.    ***Fee Claims***.

(a)    All Entities seeking an award by the Bankruptcy Court of Fee Claims shall file and serve on counsel to New Holdco and New Holdco Sub, the U.S. Trustee, counsel to the Consenting Lenders, and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Court, on or before the date that is forty-five (45) days after the Effective Date, their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred from the Petition Date through the Effective Date.  Objections to any Fee Claims must be filed and served on counsel to New Holdco and New Holdco Sub, counsel to the Consenting Lenders, and the Entity requesting payment no later than twenty-one (21) calendar days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the party requesting compensation of a Fee Claim).

(b)     Allowed Fee Claims shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court (i) upon the later of (A) the Effective Date and (B) the date upon which a Final Order relating to any such Allowed Fee Claim is entered, in each case, as soon as reasonably practicable, or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtor, New Holdco, or New Holdco Sub, as applicable.

(c)     New Holdco and/or New Holdco Sub, as applicable, is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.  On or about the Effective Date, holders of Fee Claims shall provide a reasonable estimate of such post-Effective Date Fee Claims to the Debtor, New Holdco, or New Holdco Sub and the Debtor, New Holdco, or New Holdco Sub shall separately reserve for such estimated amounts for the benefit of the holders of the Fee Claims.  If a holder of a Fee Claim does not provide an estimate, the Debtor, New Holdco, or New Holdco Sub may estimate the unpaid and unbilled fees and expenses of such holder of a Fee Claim.

2.3.     ***Priority Tax Claims***.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such Allowed Priority Tax Claim, at the sole option of the Debtor, New Holdco, or New Holdco Sub (with the consent of the Consenting Lenders) (a) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date, (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (iii) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due, or (b) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

2.4.     ***Term DIP Claims***

(a)     The amount outstanding under the Term DIP Facility shall be deemed Allowed in the full amount due and owing under the Term DIP Facility Agreement, including, for the avoidance of doubt, (i) the principal amount outstanding under the Term DIP Facility; (ii) all interest accrued and unpaid thereon through and including the date of payment; and (iii) all accrued fees, expenses, and indemnification obligations payable under the Term DIP Facility Agreement.

(b)     On the Effective Date, or as soon as reasonably practicable thereafter, the outstanding Term DIP Claims shall be converted, on a dollar-for-dollar basis, into Initial New 1L Loans in full and final satisfaction, settlement, release, and discharge of such Term DIP Claims.  Upon satisfaction of the Allowed Term DIP Claims, all Liens and security interests granted to secure the Term DIP Facility shall be deemed cancelled, released and terminated and shall be of no further force and effect.

2.5.    ***Transaction Expenses.***

During the period commencing on the Petition Date through the Effective Date, the Debtor will promptly pay, or cause a Non-Debtor GCS Party to promptly pay, in full in Cash any Transaction Expenses in accordance with the terms of the Restructuring Support Agreement. Without limiting the foregoing, to the extent that any Transaction Expenses remain unpaid as of the Business Day prior to the Effective Date, on the Effective Date, the Debtor, New Holdco, or New Holdco Sub shall pay, or cause a Non-Debtor GCS Party to pay, in full in Cash any outstanding Transaction Expenses that are invoiced without the requirement for the filing of retention applications, fee applications, or any other applications in the Chapter 11 Case, and without any requirement for further notice or Bankruptcy Court review or approval. For the avoidance of doubt, Transaction Expenses invoiced after the Effective Date shall be paid promptly, but no later than ten (10) business days, following receipt of an invoice.

### ARTICLE III    CLASSIFICATION OF CLAIMS AND INTERESTS.

3.1.    ***Classification in General.***

Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified Administrative Expense Claims, Priority Tax Claims and Term DIP Claims, as described in Article II.

A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest, or any portion thereof, is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided* that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Allowed Claim or Allowed Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

3.2.    ***Summary of Classification.***

The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; and (c) deemed to accept or reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, including Fee Claims, Term DIP Claims, and Priority Tax Claims, have not been classified.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Deemed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (Deemed to accept) |
| 3 | Existing Term Loan Claims | Impaired | Yes |
| 4 | Existing ABL Claims | Unimpaired | No (Deemed to accept) |
| 5 | General Unsecured Claims | Unimpaired | No (Deemed to accept) |
| 6 | Intercompany Claims | Unimpaired | No (Deemed to accept) |
| 7 | Midco Equity Interests | Impaired | No (Deemed to reject) |

3.3.     ***Special Provision Governing Unimpaired Claims.***

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtor, New Holdco, or New Holdco Sub as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

3.4.     ***Elimination of Vacant Classes.***

Any Class of Claims against or Interests in the Debtor that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan of the Debtor for purposes of voting to accept or reject such Debtor's Plan, and disregarded for purposes of determining whether the Debtor's Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

**ARTICLE IV        TREATMENT OF CLAIMS AND INTERESTS.**

4.1.     ***Priority Non-Tax Claims (Class 1).***

(a)      *Classification*:  Class 1 consists of Priority Non-Tax Claims.

(b)      *Treatment*:  Except to the extent that a holder of an Allowed Priority Non-Tax Claim against the Debtor agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement, release and discharge of such Allowed Priority Non-Tax Claim, at the sole option of the Debtor or New Holdco, as applicable (with the consent of the Consenting Lenders) (i) each such holder shall receive payment in Cash in an amount equal to such Allowed Priority Non-Tax Claim, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, in each case, or as soon as reasonably practicable thereafter, (ii) such holder's Allowed Priority Non-Tax Claim shall be Reinstated, or (iii) such holder shall receive such other treatment so as to render such holder's Allowed Priority Non-Tax Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code.

18

(c)     *Voting*:  Class 1 is Unimpaired, and the holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Priority Non-Tax Claims.

4.2.     **Other Secured Claims (Class 2).**

(a)     *Classification*:  Class 2 consists of the Other Secured Claims.  To the extent that Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 2 for purposes of voting to accept or reject the Plan and receiving distributions under the Plan.

(b)     *Treatment*:  Except to the extent that a holder of an Allowed Other Secured Claim against the Debtor agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement, release and discharge of such Allowed Other Secured Claim, at the option of the Debtor or New Holdco, as applicable (with the consent of the Consenting Lenders)  (i) each such holder shall receive payment in Cash in an amount equal to the Allowed Amount of such Other Secured Claim, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, in each case, or as soon as reasonably practicable thereafter, (ii) the collateral securing its Allowed Other Secured Claim, (iii) such holder's Allowed Other Secured Claim shall be Reinstated, or (iv) such holder shall receive such other treatment so as to render such holder's Allowed Other Secured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)     *Voting*:  Class 2 is Unimpaired, and the holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Other Secured Claims.

4.3.     **Existing Term Loan Claims (Class 3)**

(a)     *Classification*:  Class 3 consists of the Existing Term Loan Claims.

(b)     *Treatment*:  On the Effective Date, or as soon as practicable thereafter, (x) each holder of an Allowed Existing Term Loan Claim affiliated with BSP shall receive, in full and final satisfaction, settlement, release, and discharge of such Existing Term Loan Claim, (i) its *Pro Rata* share of Initial New 1L Loans, (ii) its *Pro Rata* share of New 2L Loans, (iii) its *Pro Rata* share of New Holdco Junior Preferred Equity, and (iv) 100% of the New Holdco Common Equity; and (y) each holder of an Allowed Existing Term Loan Claim affiliated with GS shall receive, in full and final satisfaction, settlement, release, and discharge of such Existing Term Loan Claim, (i) its *Pro Rata* share of Initial New 1L Loans (less the amount of Term DIP Claims outstanding immediately prior to the Effective Date rolled into Initial New 1L Loans), (ii) its *Pro Rata* share of New 2L Loans, (iii) 100% of the New Midco Equity, and (iv) as a result of receiving 100% of the New Midco Equity, GS will acquire an indirect interest in (A) 100% of the New Holdco Senior Preferred Equity and (B) its *Pro Rata* share of New Holdco Junior Preferred Equity, both of which shall be issued to the Reorganized Debtor.

19

(c)     *Voting*:  Class 3 is Impaired.  Holders of Existing Term Loan Claims are entitled to vote on the Plan.

4.4.     ***Existing ABL Facility Claims (Class 4)***

(a)     *Classification*:  Class 4 consists of Existing ABL Facility Claims.

(b)     *Treatment*:  On the Effective Date, or as soon as practicable thereafter, (i) all outstanding amounts under the Existing ABL Facility shall be converted, on a dollar for dollar basis, into amounts outstanding under the Exit ABL Facility and all of the Debtor's obligations under the Existing ABL Facility shall be assumed by New Holdco or (ii) holders of Existing ABL Facility Claims shall receive such other treatment so as to render such holder's Allowed Existing ABL Facility Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)     *Voting*:  Class 4 is Unimpaired, and the holders of Existing ABL Facility Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Existing ABL Facility Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Existing ABL Facility Claims.

4.5.     ***General Unsecured Claims (Class 5).***

(a)     *Classification*:  Class 5 consists of General Unsecured Claims.

(b)     *Treatment*:  Except to the extent that a holder of an Allowed General Unsecured Claim against the Debtor agrees to a less favorable treatment of such Claim or has been paid before the Effective Date, at the sole option of the Debtor or New Holdco, as applicable (with the consent of the Consenting Lenders), on and after the Effective Date, (i) New Holdco shall continue to pay or treat each Allowed General Unsecured Claim in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Unsecured Claim or (ii) such holder shall receive such other treatment so as to render such holder's Allowed General Unsecured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code, in each case, subject to all defenses or disputes the Debtor and/or New Holdco may assert as to the validity or amount of such Claims, including as provided in Section 10.8 of the Plan.

(c)     *Voting*:  Class 5 is Unimpaired, and the holders of General Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of General Unsecured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such General Unsecured Claims.

4.6.     ***Intercompany Claims (Class 6).***

(a)     *Classification*:  Class 6 consists of Intercompany Claims.

(b)     *Treatment*:  On the Effective Date, or as soon as practicable thereafter, all Intercompany Claims shall be adjusted, Reinstated, or discharged to the extent determined to be appropriate

20

by the Company with the consent of Consenting Lenders, but shall not be paid in Cash; *provided however*, for the avoidance of doubt, any Intercompany Claims held by ORG GC Holdings, LLC or Owner Resource Group, LLC and its affiliates shall be released on the Effective Date.

(c) *Voting*: Class 6 is Unimpaired, and the holders of Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Intercompany Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Intercompany Claims.

4.7. **Midco Equity Interests (Class 7).**

(a) *Classification*: Class 7 consists of Midco Equity Interests.

(b) *Treatment*: On the Effective Date the Midco Equity Interests shall be deemed cancelled, released, extinguished and shall be of no further force and effect without further action by any party or order of the Bankruptcy Court.

(c) *Voting*: Class 7 is Impaired. In accordance with section 1126(g) of the Bankruptcy Code, holders of Midco Equity Interests are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to Midco Equity Interests.

4.8. **Subordinated Claims and Interests.**

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtor, New Holdco, or New Holdco Sub, as applicable, reserves the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE V    MEANS FOR IMPLEMENTATION.

5.1. **Compromise and Settlement of Claims, Interests, and Controversies.**

Pursuant to section 363 and 1123(b)(2) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan (including the Restructuring Support Agreement) shall constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest holder may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the

best interests of the Debtor, its Estate, and holders of such Claims and Interests, and is fair, equitable, and reasonable.

5.2.    ***Continued Corporate Existence.***

(a)    Except as otherwise provided in this Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, the Debtor shall continue to exist after the Effective Date as a limited liability company, with all the powers of a limited liability company, in accordance with the applicable laws of the jurisdiction in which it is organized and pursuant to its organizational documents and the New Organizational Documents, as applicable, and such documents are deemed to be amended or amended and restated pursuant to the Plan and require no further action or approval (other than any requisite filing required under applicable state, provincial, or federal law).

(b)    On or after the Effective Date, the Reorganized Debtor, New Holdco, and New Holdco Sub may take such action that may be necessary or appropriate as permitted by applicable law and the New Organizational Documents, as the Reorganized Debtor, New Holdco, and New Holdco Sub, as applicable, may determine is reasonable and appropriate to effect any transaction described in, approved by, or necessary or appropriate to effectuate the Plan, including, without limitation, causing: (i) the legal name of the Reorganized Debtor to be changed; or (ii) the closure of the Reorganized Debtor's Chapter 11 Case on the Effective Date or any time thereafter.

5.3.    ***Exit ABL Facility.***

(a)    On the Effective Date, in accordance with, and subject to, the terms and conditions of the Exit ABL Facility Documents, New Holdco and New Holdco Sub will act as guarantors under the Exit ABL Facility Agreement without the need for any further corporate action and without further action by the holders of Claims or Interests.  On and after the Effective Date, the applicable Exit ABL Facility Documents shall constitute legal, valid and bind obligations of New Holdco and New Holdco Sub and be enforceable in accordance with their respective terms.

(b)    All Liens, mortgages, and security interests securing the obligations arising under the Existing ABL Facility that were collateral securing the Existing ABL Claims as of the Petition Date are unaltered by the Plan, and all such Liens, mortgages, and security interests are created and perfected with respect to the Exit ABL Facility to the same extent, in the same manner, and on the same terms and priorities as they were with respect to the Existing ABL Claims, except as the foregoing may be altered pursuant to the Exit ABL Facility Documents and the New 1L/2L/ABL Intercreditor Agreement.  On the Effective Date, the Exit ABL Facility Documents shall be executed and delivered substantially on terms and conditions which New Holdco, New Holdco Sub, the Non-Debtor GCS Parties thereto, and the Exit ABL Facility Lenders (with the consent of the Consenting Lenders) may agree and such documents shall become effective in accordance with their terms.  All Liens and security interests granted and continuing pursuant to the Exit ABL Facility Documents shall be (i) valid, binding, perfected (to the extent provided in the security documents), and enforceable Liens and security interests in the personal and real property described in and subject to such document, with the priorities established in respect thereof under the New Intercreditor Agreement and/or applicable nonbankruptcy law and (ii) not subject to avoidance, recharacterization, or subordination under any applicable law. New Holdco, New Holdco Sub, and the

22

Entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish, attach and perfect such Liens and security interests under any applicable law, and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interest to third parties.

(c)     New Holdco and New Holdco Sub shall be authorized to execute, deliver, and enter into and perform under the Exit ABL Facility Documents, including the payment of all fees, indemnities, and expenses provided for therein, without the need for any further corporate or limited liability company action and without further action by the holders of Claims or Interests.

5.4.     ***Exit Term Loan Facilities.***

(a)     On the Effective Date, in accordance with, and subject to, the terms and conditions of the Exit Term Loan Facility Documents, the Exit Term Loan Facility Documents shall be executed and delivered, and New Holdco and New Holdco Sub shall be authorized to execute, deliver and enter into the Exit Term Loan Facility Documents, in each case, without (i) further notice to the Bankruptcy Court or (ii) further act or action under applicable, law, regulation, order, or rule or the vote, consent, authorization, or approval of any Entity (including, without limitation, the holders of Claims or Interests), except in each case, to the extent set forth in the Exit Term Loan Facility Documents.  The Exit Term Loan Facility Agreements shall be executed and delivered in substantially the same form as the Exit Term Loan Facility Agreements annexed to the Restructuring Support Agreement as Exhibit D and Exhibit E, with such modifications to which New Holdco, New Holdco Sub, and the Consenting Lenders may agree.

(b)     Confirmation of the Plan shall be deemed approval of the Exit Term Loan Facility Documents, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by New Holdco or New Holdco Sub in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein, authorization of New Holdco and New Holdco Sub to enter into and execute the Exit Term Loan Facility Documents, and authorization to create or perfect the Liens in connection therewith.

(c)     On the Effective Date, all Liens, mortgages and security interests granted pursuant to the Exit Term Loan Facility Documents shall be (i) deemed to be granted, (ii) shall be valid, binding, automatically perfected (to the extent provided in the security documents), and enforceable Liens and mortgages on, and security interests in, the personal and real property described in and subject to the Exit Term Loan Facility Documents, with the priorities established in respect thereof under the Exit Term Loan Facility Documents, the New Intercreditor Agreement and/or applicable non-bankruptcy law, as applicable and (ii) not subject to avoidance, recharacterization, or subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or under any applicable law.  New Holdco and New Holdco Sub and the Entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish, attach and perfect such Liens and security interests under any applicable law or that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other

filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interest to third parties.

(d)     New Holdco and New Holdco Sub shall be authorized to execute, deliver, and enter into and perform under the Exit Term Loan Facility Documents, including the payment of all fees, indemnities, and expenses provided for therein, without the need for any further corporate or limited liability company action and without further action by the holders of Claims or Interests.

5.5.     *New Intercreditor Agreements.*

(a)     On the Effective Date, the Exit ABL Facility Agent, the New 1L Facility Agent, and the New 2L Facility Agent shall enter into the New 1L/2L/ABL Intercreditor Agreement.  Each Exit ABL Facility Lender, New 1L Facility Lender, and New 2L Facility Lender shall be deemed to have directed the Exit ABL Facility Agent, the New 1L Facility Agent, and the New 2L Facility Agent, as applicable, to execute the New 1L/2L/ABL Intercreditor Agreement and shall be bound by the terms of the New 1L/2L/ABL Intercreditor Agreement from and after the Effective Date as if it were a signatory thereto.

(b)     On the Effective Date, the New 1L Facility Agent and the New 2L Facility Agent shall enter into the New 1L/2L Intercreditor Agreement.  Each New 1L Facility Lender and New 2L Facility Lender shall be deemed to have directed the the New 1L Facility Agent and the New 2L Facility Agent, as applicable, to execute the New 1L/2L Intercreditor Agreement and shall be bound by the terms of the New 1L/2L Intercreditor Agreement from and after the Effective Date as if it were a signatory thereto.

5.6.     *New Organizational Documents.*

On or immediately prior to the Effective Date, the New Organizational Documents shall be automatically adopted by New Holdco and New Holdco Sub, as applicable.  To the extent required under the Plan or applicable non-bankruptcy law, New Holdco and New Holdco Sub, as applicable, will file the applicable New Organizational Documents with the Delaware Secretary of State if and to the extent required in accordance with the applicable laws of the state of Delaware.  The New Organizational Documents will (a) authorize the issuance of the New Holdco Equity and (b) include a provision pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code prohibiting the issuance of non-voting equity Securities.

After the Effective Date, New Holdco and New Holdco Sub, as applicable, may amend and restate its New Organizational Documents in accordance with the terms thereof, and New Holdco and New Holdco Sub, as applicable, may file amended certificates of formation or such other applicable formation documents, and other constituent documents as permitted by the laws of the state of Delaware and the New Organizational Documents.

On the Effective Date, New Holdco and all of the holders of the New Holdco Equity shall execute the LLC Agreement.  The LLC Agreement shall be binding on New Holdco and all parties receiving, and all holders of, New Holdco Equity.

5.7.     ***Authorization and Issuance of the New Equity.***

(a)     On the Effective Date, the Debtor, the Reorganized Debtor, New Holdco, and New Holdco Sub, as applicable, are authorized to issue or cause to be issued and shall issue the New Equity, in accordance with the terms of the Plan, the New Organizational Documents, and the Restructuring Transaction Steps without the need for any further corporate, limited liability company, or shareholder action, vote, consent, authorization or approval of any Person or without further notice to or order of the Bankruptcy Court. All of the New Equity, issuable under the Plan, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable. Any such issuance would be part of the exchange or other transfer or transaction as contemplated and required hereunder.

(b)     Upon the Effective Date, (i) the New Equity shall not be registered under the Securities Act, and shall not be listed for public trading on any securities exchange and (ii) neither the Reorganized Debtor, New Holdco, nor New Holdco Sub shall be a reporting company under the Exchange Act. The distribution of New Equity pursuant to the Plan may be made by means of book-entry registration on the books of a transfer agent for shares of New Equity or by means of book-entry exchange through the facilities of a transfer agent reasonably satisfactory to the Debtor and the Consenting Lenders in accordance with the customary practices of such agent, as and to the extent practicable.

5.8.     ***Section 1145 Exemption.***

(a)     The offer, issuance, sale and distribution of the New Equity under the Plan shall be exempt, pursuant to section 1145 of the Bankruptcy Code, without further act or action by any Entity, from the registration and prospectus delivery requirements under (i) the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and (ii) any federal, state or local law requiring registration and/or delivery of a prospectus for the offer, issuance, sale or distribution of Securities.

(b)     The New Equity will be freely tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act of 1933; (ii) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (iii) the restrictions, if any, on the transferability of the New Equity contained in the New Organizational Documents; and (iv) applicable regulatory approval.

5.9.     ***Cancellation of Existing Securities and Agreements.***

(a)     Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan or the Confirmation Order, on the Effective Date, all agreements, instruments, and other documents evidencing an Existing Term Loan Claim or Midco Equity Interest and any rights of any holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect and the obligations of the Debtor thereunder shall be deemed fully satisfied, released, and discharged. Notwithstanding such cancellation and discharge, the Existing Term Loan Credit Agreement shall continue in effect, except as otherwise provided herein, solely to (i) the extent necessary to allow the holders of Allowed Existing Term Loan Claims to seek allowance and receive distributions under the Plan, (ii) the extent necessary to allow the Debtor, Reorganized Debtor, New Holdco, and New Holdco Sub, as

applicable, the Existing Term Loan Facility Agent, and the Disbursing Agent to make post-Effective Date distributions or take such other action pursuant to the Plan on account of the Allowed Existing Term Loan Claims and to otherwise exercise their rights and discharge their obligations relating to the interests of the holders of such Claims, (iii) allow the holders of Allowed Existing Term Loan Claims to retain their respective rights and obligations vis-à-vis other holders of Claims pursuant to any applicable loan documents, (iv) allowing the Existing Term Loan Facility Agent to enforce its rights, claims, and interests vis-à-vis any party other than the Debtor (including the maintenance, exercise and enforcement of any charging lien or distribution waterfall), (v) preserve all rights, including rights of enforcement, of the Existing Term Loan Facility Agent to indemnification, reimbursement, or contribution pursuant to and subject to the terms of the Existing Term Loan Credit Agreement, (vi) appear and be heard in the Chapter 11 Case or in any proceeding in the Bankruptcy Court, including to enforce any obligation owed to the Existing Term Loan Facility Agent or Existing Term Lenders and (vii) permit the Existing Term Loan Facility Agent to perform any functions that are necessary to effectuate the foregoing; *provided*, *however*, that nothing in this Section 5.9 shall affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any liability or expense to the Reorganized Debtor, New Holdco or New Holdco Sub.  Except as provided in the Plan or as may be necessary to effectuate the terms of the Plan, on the Effective Date, the Existing Term Loan Facility Agent, and its agents, successors, and assigns, shall be automatically and fully discharged of all of their duties and obligations associated with the Existing Term Loan Credit Agreement.  To the extent cancelled in accordance with this paragraph, the commitments and obligations (if any) of the Existing Term Lenders to extend any further or future credit or financial accommodations to the Debtor, any of its subsidiaries or any of its successors or assigns under the Existing Term Loan Credit Agreement shall fully terminate and be of no further force or effect on the Effective Date. Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, loss, waiver, or other forfeiture of, or by, the Debtor or its interests, or any increase or acceleration of any of their obligations, in any such case as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for herein shall be deemed null and void and shall be of no force and effect.  For the avoidance of doubt, nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligation of the Debtor or any of its counterparties under any executory contract or unexpired lease to the extent such executory contract or lease has been assumed by the Debtor pursuant to a Final Order of the Bankruptcy Court or hereunder.

(b)     On the Effective Date, any registration rights or similar agreements with respect to the Midco Equity Interests will also be cancelled and any obligations of the Debtor thereunder will be discharged.

5.10.     ***Officers and Board of Managers***

(a)     On the Effective Date, the terms of the current members of the board of managers of the Debtor shall expire, and commencing on the Effective Date, each of the managers of New Holdco shall be elected and serve pursuant to the terms of the New Organizational Documents pertaining to New Holdco, including the LLC Agreement, and may be replaced or removed in accordance with such New Organizational Documents.

(b)     The New Board shall consist of five board members to be appointed by the holders of a majority of the New Holdco Common Equity; *provided* that at least two of the five board members shall be independent; and *provided further that* (i) for so long as a holder of New Holdco Junior Preferred Equity holds at least 32% of the New Holdco Junior Preferred Equity, the appointment of two independent board members shall require the consent of such holder; and (ii) for so long as a holder of New Holdco Junior Preferred Equity holds less than 32% of the New Holdco Junior Preferred Equity but not less than 16% of the New Holdco Junior Preferred Equity, the appointment of one independent board member shall require the consent of such holder; *provided further* that, unless otherwise agreed by BSP and GS, on the Effective Date, the New Board as of the Effective Date shall initially consist of three board members, one of which shall be an independent director.  The remaining two board seats shall be filled following the Effective Date.  Any direct and indirect subsidiaries of New Holdco shall continue to be member managed, except GCS LP which shall continue to be managed by GP Buyer, its general partner.

(c)     Except to the extent that a member of the board of managers of the Debtor is appointed to serve as a manager of New Holdco on and after the Effective Date, the managers of the Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Reorganized Debtor or to New Holdco on or after the Effective Date and each manager will be deemed to have resigned or shall otherwise cease to be a manager of the Debtor on the Effective Date.

(d)     The officers of the Debtor immediately before the Effective Date shall serve as the initial officers of New Holdco on and after the Effective Date and in accordance with the Plan and applicable non-bankruptcy law.

(e)     In accordance with section 1129(a)(5) of the Bankruptcy Code, the identities and affiliations of the members of the New Board and any Person proposed to serve as an officer of New Holdco and New Holdco Sub shall be disclosed at or before the Confirmation Hearing, in each case to the extent the identity of such proposed manager or officer is known at such time.  To the extent any such manager or officer of New Holdco is an insider, the Debtor will disclose the nature of any compensation to be paid to such manager or officer.  Each such manager and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of New Holdco and New Holdco Sub.

5.11.   ***Effectuating Documents; Further Transactions.***

(a)     After the Confirmation Date, but prior to the Effective Date, the Debtor, the Reorganized Debtor, New Holdco and New Holdco Sub, as applicable, shall take such actions as may be or become necessary or appropriate to effect the Restructuring Transaction Steps.

(b)     On or as soon as practicable after the Effective Date, the Reorganized Debtor, New Holdco, or New Holdco Sub, as applicable, shall take such actions as may be or become necessary or appropriate to effect any transaction described in, approved by, or contemplated by, or necessary to effectuate, the Plan, including (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, financing, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and the Restructuring Support Agreement and that satisfy the applicable requirements of applicable law and any other terms to which the

27

applicable Entities may determine, (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and the Restructuring Support Agreement and having other terms to which the applicable parties agree, (iii) the execution, delivery and, if applicable, filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, or dissolution and the New Organizational Documents pursuant to applicable state law, (iv) the issuance of securities, all of which shall be authorized and approved in all respects in each case without further action being required under applicable law, regulation, order, or rule, and (v) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law, subject, in each case, to the New Organizational Documents.

(c)     Each officer and member of the board of managers of the Debtor is (and each officer and member of the New Board shall be) authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtor, New Holdco, or New Holdco Sub, as applicable, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorization, consents, or any further action required under applicable law, regulation, order, or rule (including, without limitation, any action by the stockholders or directors or managers of the Debtor, the Reorganized Debtor, New Holdco, or New Holdco Sub) except for those expressly required pursuant to the Plan.

(d)     All matters provided for herein involving the corporate structure of the Debtor or Reorganized Debtor, New Holdco, New Holdco Sub, or any other Non-Debtor GCS Party, or any corporate, limited liability company, or related action required by any of the foregoing in connection herewith shall be deemed to have occurred and shall be in effect, without any requirement of further action by the stockholders, members, or managers of such Entities, and with like effect as though such action had been taken unanimously by the stockholders, members, directors, managers, or officers, as applicable, of such Entities.

5.12.   ***Cancellation of Liens.***

(a)     Except as otherwise specifically provided herein, in the Confirmation Order or in any contract, instrument, release, or other agreement or document created or entered into pursuant to the Plan, upon the Effective Date, any Lien securing a Secured Claim shall be deemed fully released and discharged, and all of the right, title, and interest of any Holder of such Liens shall revert to New Holdco and/or New Holdco Sub, as applicable, and its successors and assigns.  Any holder of such Secured Claim (or any agent for such holder) shall be authorized and directed, at the sole cost and expense of the Debtor New Holdco, or New Holdco Sub, as applicable, to release any Collateral or other property of the Debtor (including any cash collateral and possessory collateral) held by such holder (and any agent for such holder), and to take such actions as may be reasonably requested by the Debtor, the Reorganized Debtor, New Holdco, or New Holdco Sub to cancel, extinguish, and evidence the release of such Liens (including the execution, delivery and filing or recording of such release), if they have been or will be satisfied or discharged in full pursuant to the Plan.

(b)      Upon the payment or other satisfaction of an Allowed Other Secured Claim, the holder of such Allowed Other Secured Claim shall deliver to New Holdco and/or New Holdco Sub, as applicable, any Collateral or other property of the Debtor held by such holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Other Secured Claim that may be required in order to terminate any related financing statements, mortgages, mechanic's liens, or lis pendens.

5.13.    ***Management Incentive Plan.***

Following the Effective Date, New Holdco may choose to implement the Management Incentive Plan.

5.14.    ***Nonconsensual Confirmation.***

The Debtor intends to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code as to any Classes that reject or are deemed to reject the Plan.

5.15.    ***Closing of Chapter 11 Case.***

After the Estate has been fully administered, the Reorganized Debtor shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and Bankruptcy Rules.

5.16.    ***Notice of Effective Date.***

On the Effective Date, the Debtor shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

5.17.    ***Sources for Plan Distributions.***

The Debtor shall fund distributions under the Plan with (a) Cash on hand, (b) the proceeds of the Term DIP Facility, (c) the Exit ABL Facility, (d) the Exit Term Loan Facilities; and (e) the New Equity in accordance with the Plan and the Restructuring Support Agreement.  Cash payments to be made pursuant to the Plan will be made by the Disbursing Agent, which may be New Holdco or New Holdco Sub.  From and after the Effective Date, subject to any applicable limitations set forth in any post-Effective Date agreement (including, without limitation, the Exit ABL Facility, the Exit Term Loan Facilities and the LLC Agreement), New Holdco shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing as the New Board deems appropriate.

## ARTICLE VI      DISTRIBUTIONS.

6.1.    ***Distributions Generally.***

The Disbursing Agent shall make all distributions under the Plan to the appropriate holders of Allowed Claims in accordance with the terms of the Plan.

6.2.    *Distribution Record Date.*

As of the close of business on the Effective Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtor or its respective agents, shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Interests. The Disbursing Agent shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Effective Date. In addition, with respect to payment of any Cure amounts or disputes over any Cure amounts, neither the Debtor nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure amount.

6.3.    *Date of Distributions.*

Except as otherwise provided in the Plan, in a Final Order, or as otherwise agreed to by the Debtor, New Holdco, or New Holdco Sub, as the case may be, and the holder of the applicable Allowed Claim, any distributions and deliveries to be made under the Plan shall be made on the Effective Date or as otherwise determined in accordance with the Plan, including, without limitation, the treatment provisions of Article IV of the Plan, or as soon as practicable thereafter; *provided* that the Disbursing Agent may implement periodic distribution dates to the extent it determines appropriate.

6.4.    *Disbursing Agent.*

All distributions under the Plan shall be made by New Holdco and/or New Holdco Sub (or such other Entity designated by New Holdco and/or New Holdco Sub, as applicable), as Disbursing Agent, on or after the Effective Date or as otherwise provided herein. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties, and all reasonable and documented fees and out-of-pocket expenses incurred by such Disbursing Agents directly related to distributions hereunder shall be reimbursed by New Holdco and/or New Holdco Sub, as applicable. New Holdco and/or New Holdco Sub shall use all commercially reasonable efforts to provide the Disbursing Agent (if other than New Holdco and/or New Holdco Sub) with the amounts of Claims and the identities and addresses of holders of Claims, in each case, as set forth in the Debtor's, New Holdco's, or New Holdco Sub's books and records. New Holdco and/or New Holdco Sub shall cooperate in good faith with the applicable Disbursing Agent (if other than New Holdco and/or New Holdco Sub) to comply with the reporting and withholding requirements outlined in Section 6.19 of the Plan.

6.5.    *Rights and Powers of Disbursing Agent.*

(a)    From and after the Effective Date, the Disbursing Agent, solely in its capacity as Disbursing Agent, shall be exculpated by all Entities, including, without limitation, holders of Claims against and Interests in the Debtor and other parties in interest, from any and all Claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Disbursing Agent. No

30

holder of a Claim or Interest or other party in interest shall have or pursue any claim or Cause of Action against the Disbursing Agent, solely in its capacity as Disbursing Agent, for making payments in accordance with the Plan or for implementing provisions of the Plan, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Disbursing Agent.

(b)      A Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder, (ii) make all distributions contemplated hereby, and (iii) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

## 6.6.     *Expenses of Disbursing Agent.*

Except as otherwise ordered by the Bankruptcy Court, any reasonable and documented fees and out-of-pocket expenses incurred by the Disbursing Agent acting in such capacity (including reasonable documented attorneys' fees and out-of-pocket expenses) on or after the Effective Date shall be paid in Cash by the Reorganized Company in the ordinary course of business.

## 6.7.     *No Postpetition Interest on Claims.*

Except to the extent that payments to Allowed General Unsecured Claims are not timely made pursuant to Section 4.3 of the Plan or as otherwise provided in the Plan, the Confirmation Order, or another order of the Bankruptcy Court or required by the Bankruptcy Code, interest shall not accrue or be paid on any Claims on or after the Petition Date, *provided*, *however*, if interest is payable pursuant to the preceding sentence, interest shall accrue at the federal judgment rate pursuant to 28 U.S.C. § 1961 on a non-compounded basis from the date the obligation underlying the Claim becomes due and is not timely paid through the date of payment; *provided, however*, the Existing ABL Facility Claims shall accrue and be paid interest in accordance with the terms set forth in the Existing ABL Facility Agreement.

## 6.8.     *Delivery of Distributions.*

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made by the Disbursing Agent, who shall transmit such distribution to the applicable holders of Allowed Claims at the address for each such holder on the Debtor's records as of the date of any such distribution. In the event that any distribution to any holder is returned as undeliverable, no further distributions shall be made to such holder unless and until such Disbursing Agent is notified in writing of such holder's then-current address or other necessary information for delivery, at which time all currently-due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter without interest. Nothing herein shall require the Disbursing Agent to attempt to locate holders of undeliverable distributions and, if located, assist such holders in complying with Section 6.19 of the Plan.

6.9.    ***Distributions after Effective Date.***

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

6.10.    ***Unclaimed Property.***

Undeliverable distributions or unclaimed distributions shall remain in the possession of New Holdco and/or New Holdco Sub until such time as a distribution becomes deliverable or holder accepts distribution, or such distribution reverts to New Holdco and/or New Holdco Sub, as applicable, in accordance with this provision, and shall not be supplemented with any interest, dividends, or other accruals of any kind. Such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one hundred and eighty (180) days from the date of distribution. After such date all unclaimed property or interest in property shall revert to New Holdco and/or New Holdco Sub, as applicable. Upon such revesting, the Claim of the holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an unclaimed distribution, to the contrary.

6.11.    ***Time Bar to Cash Payments.***

Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof. Thereafter, the amount represented by such voided check shall irrevocably revert to New Holdco and/or New Holdco Sub, and any Claim in respect of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Requests for re-issuance of any check shall be made to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued.

6.12.    ***Manner of Payment under Plan.***

Except as otherwise specifically provided in the Plan, at the option of the Debtor, New Holdco, or New Holdco Sub, as applicable, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtor.

6.13.    ***Satisfaction of Claims.***

Except as otherwise specifically provided in the Plan, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

6.14. ***Fractional Stock.***

If any distributions of New Equity pursuant to the Plan would result in the issuance of a fractional share or unit of New Equity, then the number of shares or units of New Equity to be issued in respect of such distribution will be calculated to one decimal place and rounded up or down to the closest whole share or unit (with a half share or unit or greater rounded up and less than a half share or unit rounded down). The total number of shares or units of New Equity to be distributed in connection with the Plan shall be adjusted as necessary to account for the rounding provided for in this Section 6.14. No consideration shall be provided in lieu of fractional shares or units that are rounded down. None of New Holdco, New Holdco Sub, or the Disbursing Agent shall have any obligation to make a distribution that is less than one (1) share or unit of New Equity.

6.15. ***Minimum Cash Distributions.***

The Disbursing Agent shall not be required to make any distribution of Cash less than One Hundred Dollars ($100) to any holder of an Allowed Claim; *provided*, *however*, that if any distribution is not made pursuant to this Section 6.15, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim.

6.16. ***Setoffs and Recoupments.***

The Debtor, the Reorganized Debtor, New Holdco, or New Holdco Sub, as applicable, or such entity's designee (including, without limitation, the Disbursing Agent) may, but shall not be required to, set off or recoup against any Claim, and any distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtor, the Reorganized Debtor, New Holdco, or New Holdco Sub, as applicable, may have against the holder of such Claim pursuant to the Bankruptcy Code or applicable nonbankruptcy law; *provided*, *however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, the Reorganized Debtor, New Holdco, New Holdco Sub, or their respective successors of any claims, rights, or Causes of Action that the Debtor, the Reorganized Debtor, New Holdco, New Holdco Sub, or their respective successors or assigns may possess against the holder of such Claim.

6.17. ***Allocation of Distributions between Principal and Interest.***

Except as otherwise required by law (as reasonably determined by New Holdco and/or New Holdco Sub), distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for United States federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

6.18. ***No Distribution in Excess of Amount of Allowed Claim.***

Notwithstanding anything in the Plan to the contrary, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, distributions in excess of the Allowed amount of such Claim.

6.19.    ***Surrender of Cancelled Instruments or Securities.***

On the Effective Date, each holder of a Certificate shall be deemed to have surrendered such Certificate to the Disbursing Agent.  Notwithstanding the immediately preceding sentence, this Section 6.19 shall not apply to any Claims and Interests Reinstated pursuant to the terms of the Plan.

6.20.    ***Accrual of Dividends and Other Rights.***

For purposes of determining the accrual of distributions or other rights after the Effective Date, the New Equity shall be deemed distributed as of the Effective Date regardless of the date on which the New Equity is actually distributed; *provided, however*, the Reorganized Debtor, New Holdco, or New Holdco Sub shall not pay any such distributions or distribute such other rights, if any, until after distribution of the applicable New Equity actually takes place.

6.21.    ***Withholding and Reporting Requirements.***

(a)    *Withholding Rights*.  In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.  In the case of a non-Cash distribution that is subject to withholding, the distributing party may withhold an appropriate portion of such distributed property and either (i) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax), or (ii) pay the withholding tax using its own funds and retain such withheld property.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  Notwithstanding the foregoing, each holder of an Allowed Claim or any other Entity that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any governmental unit, including, without limitation, income, withholding, and other taxes, on account of such distribution.  Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)    *Forms*.  Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Disbursing Agent or such other Entity designated by New Holdco and/or New Holdco Sub (which Entity shall subsequently deliver to the Disbursing Agent any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Entity) Form W-8.  If such request is made by New Holdco and/or New Holdco Sub, the Disbursing Agent, or such other Entity designated by New Holdco, New Holdco Sub, or the Disbursing Agent and the holder fails to comply before the date that is one hundred and eighty (180) days after the request is made, the distributing party may withhold an appropriate portion of such distributed property and either (i) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax), or (ii) pay the withholding tax using its own funds and retain such withheld property.

34

6.22. ***Hart-Scott-Rodino Antitrust Improvements Act.***

Any New Equity to be distributed under the Plan to an Entity required to file a premerger notification and report form under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, to the extent applicable, shall not be distributed until the notification and waiting periods applicable under such Act to such Entity have expired or been terminated.

## ARTICLE VII        PROCEDURES FOR DISPUTED CLAIMS.

7.1. ***Disputed Claims.***

Notwithstanding section 502(a) of the Bankruptcy Code, and in light of the Unimpaired status of all Claims (other than Existing Term Loan Claims) under the Plan, holders of Claims need not file proofs of Claim, and the Debtor, New Holdco, or New Holdco Sub, as applicable, and the holders of Claims shall determine, adjudicate, and resolve any disputes over the validity and amounts of such Claims in the ordinary course of business as if the Chapter 11 Case had not been commenced except that the Allowed amount of such Claims shall be subject to the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 and 503 of the Bankruptcy Code, to the extent applicable. All proofs of Claim filed in the Chapter 11 Case shall be considered objected to and Disputed without further action by the Debtor. Upon the Effective Date, all proofs of Claim filed against the Debtor, regardless of the time of filing, and including proofs of Claim filed after the Effective Date, shall be deemed withdrawn and expunged, other than as provided below, without the need for any objection by the Debtor, New Holdco, New Holdco Sub, or any further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding anything in this Plan to the contrary, disputes regarding the amount of any Cure pursuant to section 365 of the Bankruptcy Code and Claims that the Debtor seeks to have determined by the Bankruptcy Court, shall in all cases be determined by the Bankruptcy Court, unless agreed to by New Holdco and/or New Holdco Sub, any other Non-Debtor GCS Party that is party thereto, and the applicable executory contract or unexpired lease counterparty.

7.2. ***Claims Administration Responsibilities.***

(a)        Except as otherwise specifically provided in the Plan, the Debtor, New Holdco, or New Holdco Sub, as applicable, shall have sole authority: (1) to file, withdraw, or litigate to judgment, objections to Claims; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Reorganized Debtor, New Holdco, and New Holdco Sub, as applicable, shall have and retain any and all rights and defenses the Debtor had immediately prior to the Effective Date with respect to any Disputed Claim.

(b)        Notwithstanding the foregoing, the Debtor, the Reorganized Debtor, New Holdco, or New Holdco Sub, as applicable, shall be entitled to dispute and/or otherwise object to any Claim in accordance with applicable nonbankruptcy law. If the Debtor, the Reorganized Debtor, New Holdco, or New Holdco Sub, as applicable, disputes any Claim, such dispute shall be determined, resolved, or

35

adjudicated, as the case may be, in the manner as if the Chapter 11 Case had not been commenced. In any action or proceeding to determine the existence, validity, or amount of any Claim, any and all claims or defenses that could have been asserted by the Debtor or the Entity holding such Claim are preserved as if the Chapter 11 Case had not been commenced.

(c)    Any duplicate Claim or any Claim that has been paid, amended, or superseded may be adjusted or expunged on the claims register by New Holdco and/or New Holdco Sub without New Holdco and/or New Holdco Sub having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim and without further notice to or action, order, or approval of the Bankruptcy Court.

7.3.    *Estimation of Claims.*

The Debtor, New Holdco, or New Holdco Sub, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether the Debtor or any other party in interest previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor, New Holdco, or New Holdco Sub may pursue supplementary proceedings to object to the allowance of, or to any ultimate distribution on, such Claim.

7.4.    *No Distributions Pending Allowance.*

If an objection, motion to estimate, or other challenge to a Claim is filed, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

7.5.    *Distributions after Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan, including the treatment provisions provided in Article IV of the Plan. Interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

7.6.    *Claim Resolution Procedures Cumulative.*

All of the objection, estimation, and resolution procedures in the Plan are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently settled,

compromised, withdrawn, or resolved in accordance with the Plan without further notice or Bankruptcy Court approval.

7.7. **_Claims Paid by Third Parties._**

The Debtor, New Holdco, or New Holdco Sub, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor, New Holdco, or New Holdco Sub. Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor, New Holdco, or New Holdco Sub on account of such Claim, such holder shall, within fourteen calendar days of receipt thereof, repay the distribution to New Holdco and/or New Holdco Sub, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such holder to timely repay or return such distribution shall result in the holder owing New Holdco and/or New Holdco Sub annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen-day grace period specified above until the amount is repaid.

7.8. **_Insured Claims._**

If any portion of an Allowed Claim is an Insured Claim, no distributions under the Plan shall be made on account of such Allowed Claim until the holder of such Allowed Claim has exhausted all remedies with respect to any applicable insurance policies. To the extent that the Debtor's insurers agree to satisfy a Claim in whole or in part, then immediately upon such agreement, the portion of such Claim so satisfied may be expunged without an objection to such Claim having to be filed and without any further notice to or action, order or approval of the Court.

**ARTICLE VIII    EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

8.1. **_General Treatment._**

(a)    As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which the Debtor is a party shall be deemed assumed and assigned to New Holdco and, in turn, New Holdco Sub without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code, unless, with the consent of the Consenting Lenders, such contract or lease (i) was previously assumed or rejected by the Debtor pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to reject filed by the Debtor on or before the Confirmation Date; (iv) is identified in Sections 8.4 and 8.5 of the Plan; or (v) is identified for rejection on the Schedule of Rejected Contracts included in the Plan Supplement, if applicable.

(b)    Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions and assignments or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination

by the Bankruptcy Court that New Holdco and/or New Holdco Sub, as applicable, has provided adequate assurance of future performance under such assumed executory contracts and unexpired leases. Any executory contract and unexpired lease assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by New Holdco, and in turn, New Holdco Sub, as applicable, in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

(c)     To the maximum extent permitted by law, to the extent any provision in any executory contract or unexpired lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such executory contract or unexpired lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such executory contract or unexpired lease or to exercise any other default-related rights with respect thereto and any consent or advance notice required under such executory contract or unexpired lease shall be deemed satisfied by entry of the Confirmation Order.

(d)     The Debtor reserves the right, on or before 5:00 p.m. (prevailing Central Time) on the date that is seven (7) days before the Confirmation Hearing, or such other time as may be agreed in writing between the Debtor and the applicable counterparty, to amend the Schedule of Rejected Contracts to add or remove any executory contract or unexpired lease; *provided* that if the Confirmation Hearing is adjourned or continued, such amendment right shall be extended to 5:00 p.m. (prevailing Central Time) on the date that is seven (7) days before the rescheduled or continued Confirmation Hearing, and this provision shall apply in the case of any and all subsequent adjournments and continuances of the Confirmation Hearing.

8.2.    ***Determination of Cure Disputes and Deemed Consent***

(a)     Any monetary amounts by which any executory contract or unexpired lease to be assumed and assigned hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by New Holdco and/or New Holdco Sub upon the assumption and assignment thereof in the ordinary course.

(b)     If the Debtor intends to assume and assign to New Holdco and/or New Holdco Sub any executory contract or lease in connection with the Plan, the Debtor shall serve a notice on the counterparty to such executory contract or unexpired lease at least ten (10) days before the Confirmation Hearing (i) reflecting the Debtor's intention to potentially assume and assign the contract or lease to New Holdco and/or New Holdco Sub in connection with the Plan and (ii) where applicable, setting forth a proposed Cure amount (if any). Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption and assignment, or related Cure amount, must be filed, served, and actually received by the Debtor within ten (10) days of service of the applicable notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court. Any counterparty to an executory contract or unexpired lease that does not timely object to the notice of the proposed assumption and assignment to New Holdco and/or New Holdco Sub of such executory contract or unexpired lease shall be deemed to have assented to assumption and assignment of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer

or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of the Debtor, New Holdco, or New Holdco Sub under such executory contract or unexpired lease; or (iv) create or impose a Lien upon any property or asset of the Debtor, New Holdco, or New Holdco Sub, as applicable. Each such provision shall be deemed to not apply to the assumption of such executory contract or unexpired lease pursuant to the Plan and counterparties to assumed executory contracts or unexpired leases that fail to object to the proposed assumption in accordance with the terms herein shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

(c)     If there is an assumption dispute pertaining to the assumption and assignment of an executory contract or unexpired lease (other than a dispute pertaining to a Cure amount), such dispute shall be heard by the Bankruptcy Court before such assumption and assignment becomes effective; *provided* that, the Debtor, New Holdco, or New Holdco Sub, as applicable, may settle any assumption dispute without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(d)     To the extent an assumption dispute relates solely to the Cure amount, the Debtor may assume and assign the applicable executory contract or unexpired lease before the resolution of the assumption dispute; *provided* that New Holdco and/or New Holdco Sub, as assignee, shall be responsible to pay the determined amount to be Allowed by the Bankruptcy Court or otherwise agreed to by such non-Debtor party. New Holdco or New Holdco Sub, as applicable, is authorized to settle any dispute regarding the Cure amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(e)     The assumption and assignment of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against the Debtor or New Holdco and/or New Holdco Sub (as assignee) or defaults by the Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date that the Debtor assumes and assigns such executory contract or unexpired lease to New Holdco or New Holdco Sub, as applicable. Any proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Person, upon the assumption of such executory contract or unexpired lease.

8.3.     **Rejection Claims.**

Any party wishing to assert a Claim arising from the rejection of its executory contract or unexpired lease shall provide written notice of such asserted Claim to New Holdco or New Holdco Sub no later than the date that is thirty (30) days after the Effective Date and file such notice on the Bankruptcy Court's docket. Any Claims arising from the rejection of an executory contract or unexpired lease that have not been asserted and filed by such date will be automatically disallowed, forever barred from assertion,

and shall not be enforceable against the Debtor, New Holdco, New Holdco Sub, the Estate, or their respective property without the need for any objection by the Debtor, New Holdco, or New Holdco Sub or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged.  All Allowed Claims arising from the rejection of the Debtor's executory contracts or unexpired leases shall be classified and treated in Class 5 (General Unsecured Claims).

8.4.    ***Survival of the Debtor's Indemnification Obligations.***

(a)    Any obligations of the Debtor pursuant to its corporate charters, bylaws, limited liability company agreements, or other organizational documents to indemnify current officers, managers, directors, agents, and/or employees with respect to all present and future actions, suits, and proceedings against the Debtor or such directors, managers, officers, agents, and/or employees, based upon any act or omission for or on behalf of the Debtor, shall not be discharged or impaired by confirmation of the Plan; *provided, however*, that neither New Holdco nor New Holdco Sub shall indemnify directors, managers, officers, agents and/or employees of the Debtor for any Claims or Causes of Action arising out of or relating to any act or omission that constitutes intentional fraud, gross negligence, or willful misconduct.  All such obligations shall be deemed and treated as executory contracts to be assumed and assigned by the Debtor under the Plan and shall become obligations of New Holdco and, in turn, New Holdco Sub.  Any claim based on the Debtor's obligations herein shall not be a Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code.

(b)    In addition, after the Effective Date, New Holdco or New Holdco Sub, as applicable, shall not terminate or otherwise reduce the coverage under any directors' and officers' insurance policies (including any "tail policy") in effect or purchased as of the Petition Date, and all members, managers, directors, and officers who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date, in each case, to the extent set forth in such policies; *provided however*, notwithstanding the foregoing, neither the Debtor, New Holdco, nor New Holdco Sub shall be obligated to maintain or renew such directors' and officers' insurance policies as such policies relate to ORG GC Holdings, LLC and its directors and officers.

8.5.    ***Insurance Policies.***

All insurance policies pursuant to which the Debtor has any obligations in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed and assigned to New Holdco and, in turn, New Holdco Sub and shall continue in full force and effect thereafter in accordance with their respective terms.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any insurance policies, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers.  All insurance policies shall vest in New Holdco and, in turn, New Holdco Sub.

8.6.    *Intellectual Property Licenses and Agreements.*

All intellectual property contracts, licenses, royalties, or other similar agreements to which the Debtor has any rights or obligations in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed and assigned to New Holdco and, in turn, New Holdco Sub and shall continue in full force and effect.  Unless otherwise noted hereunder, all other intellectual property contracts, licenses, royalties, or other similar agreements, to the extent applicable, shall vest in the New Holdco and, in turn, New Holdco Sub and New Holdco and/or New Holdco Sub, as applicable, may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

8.7.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed and assigned to New Holdco and, in turn, New Holdco Sub shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease.

8.8.    *Reservation of Rights.*

(a)     Neither the exclusion nor inclusion of any contract or lease by the Debtor on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Debtor that any such contract or lease is or is not in fact an executory contract or unexpired lease or that the Debtor, New Holdco, or New Holdco Sub or their respective affiliates have any liability thereunder.

(b)     Except as otherwise provided in the Plan, nothing in the Plan will waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtor, New Holdco, or New Holdco Sub under any executory or non-executory contract or any unexpired or expired lease.

(c)     Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor,  New Holdco, or New Holdco Sub (to the extent any executory contracts or unexpired lease is assumed and assigned) under any executory or non-executory contract or any unexpired or expired lease.  Rejection of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtor or New Holdco, and/or New Holdco Sub (as successor to the Debtor), as applicable, under such executory contracts or unexpired leases.

(d)     If there is a Cure Dispute or a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection under the Plan, the Debtor, New Holdco, or New Holdco Sub, as applicable, shall have sixty (60) days following entry of a Final Order resolving such Cure Dispute to alter its treatment of such contract or lease by filing a notice indicating such altered treatment.

41

8.9.    ***Contracts and Leases Entered into after the Effective Date.***

Contracts and leases entered into after the Petition Date by the Debtor, including any executory contracts and unexpired leases assumed by the Debtor, will be performed by the Debtor, New Holdco, or New Holdco Sub (to the extent any executory contract or unexpired lease is assumed and assigned) in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed executory contracts and unexpired leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE IX     CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND EFFECTIVE DATE.

9.1.    ***Conditions Precedent to Confirmation of Plan.***

The following are conditions precedent to confirmation of the Plan:

(a)     the Plan and the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed, and shall be in form and substance reasonably acceptable to the Debtor and the Consenting Lenders;

(b)     the Bankruptcy Court shall have entered the DIP Order;

(c)     the Restructuring Support Agreement shall not have been terminated and shall be in full force and effect; and

(d)     the Bankruptcy Court shall have entered the Confirmation Order, and such Confirmation Order shall not have been stayed or modified.

9.2.    ***Conditions Precedent to Effective Date.***

The following are conditions precedent to the Effective Date of the Plan:

(a)     the Definitive Documents shall (i) contain terms and conditions consistent in all material respects with the Plan and the Restructuring Support Agreement  and otherwise acceptable to the Debtor and the Consenting Lenders and (ii) have been executed and delivered, and any conditions precedent contained to effectiveness therein shall have been satisfied or waived in accordance therewith and the foregoing documents shall be in full force and effect and binding upon the relevant parties;

(b)     all actions, documents, and agreements, including the Definitive Documents, necessary to implement and consummate the Plan shall have been effected or executed;

(c)     the New Organizational Documents shall have been filed with the appropriate governmental authority, as applicable;

42

(d)     the Bankruptcy Court shall have entered the Confirmation Order and such order shall not have been stayed, modified, or vacated;

(e)     the Exit Term Loan Facilities, including all documentation related thereto, shall have been duly executed and delivered by all of the Entities that are parties thereto and all conditions precedent to the effectiveness thereof (other than any conditions relating to the occurrence of the Effective Date) shall have been satisfied or duly waived in accordance with their respective terms and the closing thereof shall have occurred;

(f)     the Exit ABL Facility, including all documentation related thereto, shall have been duly executed and delivered by all of the Entities that are parties thereto and all conditions precedent to the effectiveness thereof (other than any conditions relating to the occurrence of the Effective Date) shall have been satisfied or duly waived in accordance with their respective terms and the closing thereof shall have occurred;

(g)     the New Holdco Equity shall have been issued, and all actions, documents, and agreements related thereto shall have been duly executed and delivered by all of the Entities that are parties thereto and all conditions precedent to the effectiveness thereof (other than any conditions relating to the occurrence of the Effective Date) shall have been satisfied or duly waived in accordance with their respective terms;

(h)     the New Midco Equity shall have been issued, and all actions, documents, and agreements related thereto shall have been duly executed and delivered by all of the Entities that are parties thereto and all conditions precedent to the effectiveness thereof (other than any conditions relating to the occurrence of the Effective Date) shall have been satisfied or duly waived in accordance with their respective terms and the closing thereof shall have occurred;

(i)     all governmental, regulatory, licensing, other and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan, as determined by the Debtor in consultation with the Consenting Lenders, shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired or been terminated without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

(j)     the Restructuring Support Agreement shall not have been terminated and shall be in full force and effect;

(k)     each of the requirements set forth in Section 9 of the Restructuring Support Agreement shall each have been satisfied; and

(l)     all unpaid Transaction Expenses shall have been paid in Cash, to the extent invoiced at least three (3) Business Days prior to the Effective Date and, if applicable, to the extent approved by the Bankruptcy Court, pursuant to the applicable fee arrangements of such professionals.

9.3. ***Waiver of Conditions Precedent.***

Except as otherwise provided herein, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action. Each of the conditions precedent in Section 9.1 and Section 9.2 of the Plan may be waived in writing by the Debtor, with the prior written consent of the Consenting Lenders, without any notice to any other parties in interest and without any further notice to or action, leave of or order or approval of the Bankruptcy Court. The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

9.4. ***Effect of Failure of a Condition.***

If the conditions listed in Section 9.2 of the Plan are not satisfied or waived in accordance with Section 9.3 of the Plan on or before the first Business Day that is more than ninety (90) days after the date on which the Confirmation Order is entered or by such later date as set forth by the Debtor (with the consent of the Consenting Lenders) in a notice filed with the Bankruptcy Court prior to the expiration of such period, the Plan shall be null and void in all respects and nothing contained in the Restructuring Support Agreement, the Plan or the Disclosure Statement shall (a) constitute a waiver or release of any Claims by or against or any Interests in the Debtor, (b) prejudice in any manner the rights of the Debtor, any holder of a Claim or Interest or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtor, any of the Consenting Lenders or any other Entity.

## ARTICLE X          EFFECT OF CONFIRMATION OF PLAN.

10.1. ***Vesting of Assets.***

(a)     On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtor's Estate shall vest in New Holdco and, in turn, New Holdco Sub, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided pursuant to the Plan, the Confirmation Order, the Exit ABL Facility Agreement, the Exit Term Loan Facility Documents, or the Restructuring Transaction Steps.

(b)     For the avoidance of doubt, on the Effective Date, the Debtor's obligations under each of the Existing Indemnity Agreements shall be assumed by the Debtor and assigned to New Holdco and, in turn, New Holdco Sub, and shall automatically become obligations of New Holdco and, in turn, New Holdco Sub. Upon request of any of the Sureties, New Holdco and/or New Holdco Sub, as applicable, shall execute a new indemnity agreement in a form substantially similar to the applicable Existing Indemnity Agreement with such Surety or otherwise on terms acceptable to the applicable Surety and New Holdco and/or New Holdco Sub, as applicable.

10.2. ***Binding Effect.***

As of the Effective Date, the Plan shall bind all holders of Claims against and Interests in the Debtor and their respective successors and assigns, notwithstanding whether any such holders were

44

(a) Impaired or Unimpaired under the Plan, (b) deemed to accept or reject the Plan, (c) failed to vote to accept or reject the Plan, or (d) voted to reject the Plan.

10.3. ***Discharge of Claims and Termination of Interests.***

Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided under the Plan or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, each holder (as well as any representatives, affiliates, trustees, or agents on behalf of each holder) of an Existing Term Loan Claim or Interest shall be deemed to have forever waived, released, and discharged the Debtor or any of its assets and properties, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, Causes of Action, rights, and liabilities that arose prior to the Effective Date, whether known or unknown. Upon the Effective Date, all such Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in the Debtor against the Debtor (or New Holdco and/or New Holdco Sub, as successor to the Debtor) or any of its assets or property, whether or not such holder has filed a proof of Claim and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims (other than Unimpaired Claims) and Interests subject to the occurrence of the Effective Date. For the avoidance of doubt, Unimpaired Claims shall not be discharged under the Plan. On the Effective Date, all Unimpaired Claims shall be assumed by and become obligations of New Holdco and, in turn, New Holdco Sub and receive the treatment ascribed to such Claims set forth in this Plan.

10.4. ***Term of Injunctions or Stays.***

Unless otherwise provided herein or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

10.5. ***Injunction.***

(a)     **Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.**

(b)     **Except as expressly provided in the Plan, the Confirmation Order or a separate order of the Bankruptcy Court, for obligations or distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, or as agreed to by the Debtor and a holder of a Claim against or Interest in the Debtor, all Entities who have held, hold, or may hold Claims against or Interests in the Debtor (whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other**

parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, discharged, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Released Parties or the property of any of the Released Parties, (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Released Parties or the property of any of the Released Parties, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind against the Released Parties or the property of any of the Released Parties, (iv) asserting any right of setoff, subrogation or recoupment of any kind, directly or indirectly, against any obligation due from the Released Parties or against the property of any of the Released Parties, except as contemplated or allowed by the Plan or unless such holder has filed a motion requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff, subrogation or recoupment pursuant to applicable law or otherwise and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

(c)     By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in this Section 10.5.

(d)     The injunctions in this Section 10.5 shall extend to any successors of the Debtor and its respective property and interests in property, including New Holdco and New Holdco Sub.

10.6.     **Releases.**

(a)     <u>**Estate Releases**</u>

Subject to the occurrence of and effective as of the Effective Date, except for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remains in effect or becomes effective after the Effective Date, for good and valuable consideration, the Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by the Debtor, New Holdco (as the successor to the Debtor) and the Debtor's Estate, in each case on behalf of themselves and their respective successors, assigns and representatives, and any all other Persons who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the Debtor, New Holdco (as the successor to the Debtor) and the Debtor's Estate, from any and all Claims or Causes of Action, including any derivative claims, asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, contingent or noncontingent, in law, equity or otherwise, that the Debtor, New Holdco (as the successor to the Debtor) and the Debtor's Estate would have

46

been legally entitled to assert in their own right (whether individually or collectively) or on behalf of any other Person based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including the capital structure, management, ownership or operation thereof), the Chapter 11 Case, the filing of the Chapter 11 Case, the Restructuring, the Non-Debtor GCS Parties, the Term DIP Facility, the Exit Term Loan Facilities, the purchase, sale or rescission of the purchase or sale of any security of the Debtor or New Holdco (as the successor to the Debtor), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor, the Non-Debtor GCS Parties, and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation, preparation, dissemination, filing or consummation of the Definitive Documents or related agreements, instruments or other documents, the solicitation of votes with respect to the Plan, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan, any settlement or agreement in the Chapter 11 Case, the offer, issuance and distribution of any securities issued or to be issued pursuant to the Plan, or the distribution of property under the Plan, whether or not such distribution occurs following the Effective Date, the negotiations regarding or concerning any of the foregoing, or any related act or omission, transaction, agreement, event or other occurrence related or relating to the foregoing, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; *provided*, *that* nothing herein shall be construed to release any party or entity from willful misconduct or intentional fraud as determined by a Final Order; *provided further* that nothing in the Plan shall limit the liability of professionals to their clients pursuant to applicable law.

        (b)        **Releases by Holders of Claims**

        Subject to the occurrence of and effective as of the Effective Date, except (i) for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remains in effect or becomes effective after the Effective Date or (ii) as otherwise expressly provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtor under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, the Released Parties (other than the Debtor)[2] shall be deemed conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by each Releasing Party, <u>including holders of Unimpaired Claims that have not (i) checked the box on the applicable notice (the "Opt-Out Form") indicating they opt out of granting the Releases provided in the Plan and (ii) returned such Opt-Out Form to the Voting Agent by the deadline specified in the Opt-Out Form</u>, in each case, on behalf of themselves and their respective successors,

---

[2]    For the avoidance of Doubt, notwithstanding the exclusion of the Debtor from the releases set forth in this Section 10.6(b), the "Released Parties" shall include the Debtor's current members, managers, employees, professionals, consultants, directors, and officers (in each case, in their respective capacities as such).

assigns and representatives, and any all other Persons who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the Releasing Parties, from any and all Claims, interests or Causes of Action, including any derivative claims, asserted or assertable on their behalf, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, contingent or noncontingent, in law, equity or otherwise, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of any other Person based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including the capital structure, management, ownership or operation thereof), the Chapter 11 Case, the filing of the Chapter 11 Case, the Restructuring, the Non-Debtor GCS Parties, the Term DIP Facility, the Exit Term Loan Facilities, the purchase, sale or rescission of the purchase or sale of any security of the Debtor or New Holdco (as the successor to the Debtor), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor, the Non-Debtor GCS Parties, and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation, preparation, dissemination, filing or consummation of the Definitive Documents or related agreements, instruments or other documents, the solicitation of votes with respect to the Plan, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan, any settlement or agreement in the Chapter 11 Case, the offer, issuance and distribution of any securities issued or to be issued pursuant to the Plan, or the distribution of property under the Plan, whether or not such distribution occurs following the Effective Date, the negotiations regarding or concerning any of the foregoing, or any related act or omission, transaction, agreement, event or other occurrence related or relating to the foregoing, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; *provided*, *that* nothing herein shall be construed to release any party or entity from willful misconduct or intentional fraud as determined by a Final Order; *provided further* that nothing in the Plan shall limit the liability of professionals to their clients pursuant to applicable law.

10.7.    ***Exculpation.***

Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, the Exculpated Parties shall neither have nor incur any liability to any holder of a Claim or Interest or any other party in interest, or any of their respective predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds, current or former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such Entity's respective heirs, executors, estates, servants or nominees for any act or omission (both prior to and subsequent to the Petition Date) in connection with, related to, or arising out of, in whole or in part, the Debtor, the Debtor's restructuring, the Chapter 11 Case, the purchase, sale or rescission of the purchase or sale of any Security of the Debtor or New Holdco, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Exculpated Party, the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation, preparation, filing, dissemination, or consummation of the Plan (including the Plan Supplement), the Restructuring

48

**Support Agreement, the Definitive Documents, or any related agreements, instruments, or other documents, the solicitation of votes with respect to the Plan, any settlement or agreement in the Chapter 11 Case, the offer, issuance, and distribution of any Securities issued or to be issued pursuant to the Plan, whether or not such distribution occurs following the Effective Date, negotiations regarding or concerning any of the foregoing, the administration and implementation of the Plan or property to be distributed hereunder or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for actions determined by Final Order to constitute gross negligence, willful misconduct, or intentional fraud, but in all respects such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to or in connection with the Plan or any other related document, instrument or agreement; *provided that* nothing in the Plan shall limit the liability of professionals to their clients pursuant to applicable law.**

10.8. ***Retention of Causes of Action/Reservation of Rights.***

(a) Except as otherwise provided herein, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtor had immediately prior to the Effective Date on behalf of the Estate or itself in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, any affirmative Causes of Action against parties with a relationship with the Debtor. In accordance with section 1123(b) of the Bankruptcy Code, any Causes of Action that the Debtor may hold against any Entity shall vest in New Holdco and, in turn, New Holdco Sub in accordance with the Restructuring Transaction Steps, except as otherwise expressly provided in the Plan.

(b) New Holdco and/or New Holdco Sub, through its authorized agents or representatives, shall have, retain, reserve, and be entitled to assert and enforce all such Claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Case had not been commenced, and all of the Debtor's and New Holdco's and/or New Holdco Sub's (as successor to the Debtor) legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Case had not been commenced. New Holdco and/or New Holdco Sub shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding the foregoing, the Debtor and New Holdco shall not retain any Claims or Causes of Action released pursuant to Sections 10.5, 10.6, and 10.7 of the Plan against the Released Parties or arising under chapter 5 of the Bankruptcy Code (except that such Claims or Causes of Action may be asserted as a defense to a Claim in connection with the claims reconciliation and objection procedures pursuant to section 502(d) of the Bankruptcy Code or otherwise).

(c) **New Holdco and/or New Holdco Sub, as applicable, may pursue such retained Causes of Action, as appropriate, in accordance with its best interests and the best interests of the Reorganized Company. No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of**

**Action against it as any indication that New Holdco will not pursue any and all available Causes of Action of the Debtor (or New Holdco, as successor to the Debtor) against it. New Holdco and/or New Holdco Sub, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.** Unless any Causes of Action of the Debtor against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, New Holdco and/or New Holdco Sub expressly reserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the confirmation or consummation of the Plan.

10.9.  *Solicitation of Plan.*

As of and subject to the occurrence of the Confirmation Date:  (a) the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (b) the Debtor, the Consenting Lenders, and each of their respective directors, officers, employees, affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

10.10.  *Corporate and Limited Liability Company Action.*

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (a) those set forth in 5.12(a) of the Plan; (b) the selection of the managers and officers for New Holdco, New Holdco Sub, and each of the other GCS Parties, as applicable, pursuant to the New Organizational Documents; (c) the issuance and distribution, or other transfer, of the New Equity; (d) the entry into the Exit Term Loan Facilities and Exit ABL Facility and the corresponding Exit Term Loan Facility Documents and Exit ABL Facility Documents, as applicable; (e) the adoption and/or filing of or entry into the LLC Agreement and other New Organizational Documents; and (f) all other acts or actions contemplated, or reasonably necessary or appropriate to promptly consummate the transactions contemplated, by the Plan (whether to occur before, on, or after the Effective Date), in each case, in accordance with and subject to the terms hereof.  All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtor or the Reorganized Debtor, and any corporate or limited liability company action required by the Debtor, the Reorganized Debtor, New Holdco or New Holdco Sub in connection with the Plan, shall be deemed to have occurred and shall be in effect as of the Effective Date, without any requirement of further action by holders of Claims, the security holders, directors, managers, authorized persons, or officers of the Debtor, the Reorganized Debtor, New Holdco or New Holdco Sub.  On or (as applicable) before the Effective Date, the appropriate officers of the Debtor, the Reorganized Debtor, New Holdco and New Holdco Sub, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments, certificates of merger,

50

certificates of conversion, certificates of incorporation, or comparable documents, or franchise tax reports contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtor, New Holdco, New Holdco Sub, and each of the other GCS Parties, as applicable, including, but not limited to, (i) the New Organizational Documents, including the LLC Agreement; (ii) the Exit ABL Facility Agreement; (iii) the Exit ABL Facility Documents; (iv) the Exit Term Loan Facilities, (v) the Exit Term Loan Facility Documents; and (vi) any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Section 10.10 shall be effective notwithstanding any requirements under non-bankruptcy law.

### 10.11. *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against New Holdco and New Holdco Sub or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, New Holdco, New Holdco Sub or another Entity with whom New Holdco or New Holdco Sub has been associated, solely because the Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtor is granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Case.

### 10.12. *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to entry of the Confirmation Order a Final Order has been entered determining such Claim is no longer contingent.

## ARTICLE XI      RETENTION OF JURISDICTION.

### 11.1. *Retention of Jurisdiction.*

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain non-exclusive jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Case for, among other things, the following purposes:

(a)      to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases, including Cure Disputes, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)      to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

51

(c)     to ensure that distributions to holders of Allowed Claims are accomplished as provided for in the Plan and Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(d)     to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim;

(e)     to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)     to adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(g)     to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h)     to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)     to hear and determine all Fee Claims;

(j)     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, or the Confirmation Order, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)     to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with the Plan, the Confirmation Order or the Disclosure Statement, including the Restructuring Support Agreement;

(l)     determine any other matters and for such other purposes that may arise in connection with or relate to or be provided in the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement, including the Restructuring Support Agreement

(m)     to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(n)     to hear and determine matters concerning exemptions from federal, state and local registration and prospectus delivery requirements in accordance with section 1145 of the Bankruptcy Code;

(o)     to hear, adjudicate, decide, or resolve any and all matters related to Article X of the Plan, including, without limitation, the releases, discharge, exculpations, and injunctions issued thereunder and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

(p)     to resolve disputes concerning Disputed Claims or the administration thereof;

(q)     to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(r)     to enter a final decree closing the Chapter 11 Case;

(s)     to recover all assets of the Debtor and property of the Debtor's Estate, wherever located;

(t)     to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtor pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory;

(u)     to enforce all orders previously entered by the Bankruptcy Court; and

(v)     to hear and resolve any dispute over the application to any Claim of any limit on the allowance of such Claim set forth in sections 502 or 503 of the Bankruptcy Code, other than defenses or limits that are asserted under non-bankruptcy law pursuant to section 502(b)(1) of the Bankruptcy Code.

11.2.     ***Courts of Competent Jurisdiction.***

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII     MISCELLANEOUS PROVISIONS.

12.1.     ***Payment of Sponsor Fees.***

Provided the Settlement and Release Agreement has been executed and has not been terminated prior to the Effective Date, the Debtor shall pay, or shall cause a Non-Debtor GCS Party to pay, reasonable and documented out-of-pocket professional fees and expenses of ORG GC Holdings, LLC and/or Owner Resource Group, LLC and certain of its affiliates incurred through and including the Effective Date in an amount not to exceed $100,000.

12.2.    *Payment of Statutory Fees.*

On the Effective Date and thereafter as may be required, New Holdco and/or New Holdco Sub shall pay all fees incurred pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, together with interest, if any, pursuant to section 3717 of title 31 of the United States Code until such time as a final decree is entered closing the Debtor's Chapter 11 Case, a Final Order converting such Debtor's case to a case under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing the Debtor's case is entered.

12.3.    *Substantial Consummation of the Plan.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

12.4.    *Plan Supplement.*

The Plan Supplement shall be filed with the Clerk of the Bankruptcy Court.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.  Documents included in the Plan Supplement will be posted at the website of the Debtor's notice, claims, and solicitation agent.

12.5.    *Request for Expedited Determination of Taxes.*

The Debtor shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

12.6.    *Exemption from Certain Transfer Taxes.*

To the fullest extent permitted by section 1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation, modification, consolidation, termination, refinancing, and/or recording of any Lien, mortgage, deed of trust, or other security interest or the securing of additional indebtedness by such or other means, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan or the reinvesting, transfer, or sale of any real or personal property of the Debtor pursuant to, in implementation of or as contemplated in the Plan (whether to the Reorganized Debtor, New Holdco or otherwise), (d) the grant of collateral under the Exit ABL Facility Documents and the Exit Term Loan Facility Documents, and (e) the issuance, renewal, modification, or securing of indebtedness  by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or

54

governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

12.7. ***Amendments.***

(a) *Plan Modifications*. Subject to the terms of the Restructuring Support Agreement, (i) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and (ii) after entry of the Confirmation Order, the Debtor may, upon order of the Court, amend, modify or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019 or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code.

(b) *Other Amendments*. Subject to the Restructuring Support Agreement, before the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

(c) *Approval of Amendments.* Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications or amendments to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

12.8. ***Effectuating Documents and Further Transactions.***

The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan. Each of the officers of New Holdco, New Holdco Sub, and the Reorganized Debtor is authorized, in accordance with his or her authority under the resolutions of the applicable board of directors or managers, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

12.9. ***Revocation or Withdrawal of Plan.***

To the extent permitted by the Restructuring Support Agreement, the Debtor reserves the right to revoke or withdraw the Plan prior to the Effective Date and to file subsequent plans of reorganization. If the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date does not occur on the Effective Date, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed

55

pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, the Debtor or any other Entity; (ii) prejudice in any manner the rights of the Debtor or any other Entity; or (iii) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor, any of the Consenting Lenders, or any other Entity; *provided, however,* that all orders of the Bankruptcy Court and all documents executed pursuant thereto, except the Confirmation Order, shall remain in full force and effect. This provision shall have no impact on the rights of the Consenting Lenders or the Debtor, as set forth in the Restructuring Support Agreement, in respect of any such revocation or withdrawal.

### 12.10. *Severability of Plan Provisions.*

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Debtor, New Holdco, or New Holdco Sub (to the extent any executory contracts or unexpired lease is assumed and assigned) (as the case may be) and the Consenting Lenders, and (c) nonseverable and mutually dependent.

### 12.11. *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement or a Definitive Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof; *provided* that corporate or limited liability company governance matters relating to the Debtor, the Reorganized Debtor, New Holdco and New Holdco Sub, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation or formation of such entity, as applicable.

### 12.12. *Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 12.13. *Dates of Actions to Implement the Plan.*

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be

56

completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 12.14. *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtor, the holders of Claims and Interests, the Released Parties, and each of their respective successors and assigns, including, without limitation, the Reorganized Debtor, New Holdco and New Holdco Sub.

### 12.15. *Deemed Acts.*

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

### 12.16. *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. Neither the filing of the Plan, any statement or provision contained in the Plan, nor the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

### 12.17. *Successor and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, if any, of each Entity. For the avoidance of doubt, New Holdco and, in turn, New Holdco Sub shall be the successor to the Debtor as of the Effective Date.

### 12.18. *Entire Agreement.*

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 12.19. *Exhibits to Plan.*

All exhibits, schedules, supplements, and appendices to the Plan (including the Plan Supplement) are incorporated into and are a part of the Plan as if set forth in full herein.

12.20.  ***Waiver or Estoppel.***

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to entry of the Confirmation Order.

12.21.  ***Notices.***

All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by electronic or facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

    (a)    if to the Debtor:

        ORG GC Midco, LLC
        6330 Gulfton Street
        Houston, Texas 77081
        Attn:   Mark Schordock, Chief Executive Officer
                 Michael Jones, Chief Financial Officer
                 Brad Batig, Chief Compliance Officer and General Counsel
        Email:  mark.schordock@gcserv.com
                michael.jones@gcserv.com
                brad.batig@gcserv.com

        -and-

        Weil, Gotshal & Manges LLP
        767 Fifth Avenue
        New York, New York 10153
        Attn:   Sunny Singh, Esq.
                 Katherine T. Lewis, Esq.
        Telephone:  (212) 310-8000
        Facsimile:  (212) 310-8007
        Email:  sunny.singh@weil.com
                katherine.lewis@weil.com

    (b)    if to the Consenting Lenders:

        Stroock & Stroock & Lavan LLP
        180 Maiden Lane
        New York, New York 10038

Attn:   Jayme T. Goldstein, Esq.
              Daniel P. Ginsberg, Esq.
              Joanne Lau, Esq.
Telephone:  (212) 806-5400
Facsimile:  (212) 806-6006
Email:  jgoldstein@stroock.com
         dginsberg@stroock.com
         jlau@stroock.com


       -and-

King & Spalding
1185 Avenue of the Americas, 34th Floor
New York, New York 10036
Attn:   W. Austin Jowers, Esq.
            Michael R. Handler, Esq.
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Email:  ajowers@kslaw.com
         mhandler@kslaw.com


       After the Effective Date, the Debtor has authority to send a notice to Entities providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, New Holdco and New Holdco Sub are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 solely to those Entities who have filed such renewed requests.


       *[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]*

59

Dated:  November 18, 2021

Respectfully submitted,

ORG GC MIDCO, LLC

By:     */s/ Michael Jones*
        Name: Michael Jones
        Title:  Chief Financial Officer

## EXHIBIT A

**RESTRUCTURING SUPPORT AGREEMENT**

**[OMITTED]**